ON RETURN TO REMAND
On original appeal, this court remanded this case for the trial judge to determine, under the guidelines of Exparte Branch, 526 So.2d 609 (Ala. 1987), whether vel non the appellant established a prima facie case of racial discrimination, and if so, to proceed according to the guidelines set forth in Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parteBranch, supra.
The appellant does not challenge the sufficiency of the evidence in this cause; thus, the facts will be briefly stated.
On April 26, 1986, the prosecutrix and her boyfriend were parked near the Birmingham, Alabama airport. The appellant entered the vehicle and pulled the prosecutrix's boyfriend out of the automobile. The appellant then struck him on the head with an object and pushed him into the trunk of the automobile.
The appellant then got back into the vehicle. The appellant made the prosecutrix perform oral sex on him and then had sexual intercourse with her. The appellant asked the prosecutrix for money. The prosecutrix, under force, then gave the appellant $20 (twenty dollars). The appellant took the prosecutrix's rings and her boyfriend's ring.
 I
The appellant contends that the trial judge erred in overruling his objection to the petit jury based on the use by the State of its peremptory strikes to remove four blacks from the jury venire.
On return to remand, the trial judge issued the following findings:
 "After hearing, this Court is of the opinion that a prima facie case has not been made under Batson, supra."
". . . . *Page 374 
 "Under the guidelines as specified in Ex Parte Preston Branch, supra, this Court has made the following determinations: That the district attorney challenged, by use of peremptory challenges, black jurors with the same or similar characteristics as the white jurors who were struck. Further, that black jurors remained on the jury that subsequently tried these matters.
 "The nine guidelines as specified inBranch, supra, will be discussed individually, or referred to individually, by this Court.
 "Number One, the Court makes the following finding: that the first guideline is not applicable, as shown by the transcript on remand, Pages R-3 through R-9.
 "The Second Guideline was established, in that four of six peremptory challenges were used to strike black jurors. However, the Court is satisfied with the race-neutral reasons given by the deputy district attorney, as shown in transcript on remand, R-3 through R-9. This Court would also like to cite the case of Funches v. State, 518 So.2d 781 (Feb. 10, 1987), cert. quashed, Ala.S.Ct., January 22, 1988.
 "The Third Guideline, the Court makes the following finding: that there has been no evidence as to past conduct of the deputy district attorney in using peremptory challenges to strike all blacks from the jury venire. As to this guideline, the Court would refer to the transcript on remand, R-21, wherein the Court made the finding from personal knowledge of this Court in dealing with the deputy district attorney that this guideline did not apply.
 "The Fourth Guideline, as specified, the Court well recalls questions asked by the district attorney, and they do not amount to desultory voir dire, that the questions of the deputy district attorney were connected with the main subject, and they constituted a definite plan or purpose.
 "The Fifth Guideline, as specified, the Court makes the following finding: it is not applicable, as shown by the race-neutral reasons given by the deputy district attorney in R-3 through R-9. Since Branch, supra, was decided by the Alabama Supreme Court, the Court of Criminal Appeals have (sic) decided the Funches v. State, supra, more specifically, at Page 783.
 "The Sixth Guideline, the Court makes the following finding: that there was no disparate treatment of members of the jury venire with the same characteristics.
 "The Seventh Guideline is not applicable, in that the deputy district attorney did not use disparate examination of members of the venire.
 "The Eighth Guideline, the Court makes the following finding: is not applicable, and would again cite the race-neutral reasons, supra, of the deputy district attorney.
 "The Ninth Guideline, the Court makes the following finding: is not applicable, in that the deputy district attorney used all of her peremptory challenges.
 "Although it was not specified in the hearing, in reviewing the other strikes of the district attorney, the Court would take notice that two of the white strikes had ZIP Codes in the general area of the scene referred to in the cases at bar, one ZIP Code being 35215, and the other being 35217, a Postal ZIP Code map of this area having been introduced by the defendant.
 "There was no evidence of a pattern of strikes used to challenge black jurors, such as striking all of the black jurors. The State was entitled to seven strikes; the State struck four blacks and three whites. Blacks did remain on the jury that ultimately tried these matters. Further, that all challenges or strikes were used by the State of Alabama and the defendant.
 "This Court was impressed with the statement of the district attorney in strikes of prospective black jurors, in that she used a peremptory challenge as to a prospective juror because of his appearance and demeanor. Surely, Batson v. Kentucky, supra, and the appellate courts of the State of Alabama are not *Page 375 
implying that an attorney, whether it be prosecutor or defendant's attorney, cannot rely on appearance and demeanor of prospective jurors in exercising their right to a peremptory challenge. It has long been the law of this State, and the United States as a whole, that jurors, in determining the credibility, believability of witnesses, may take into consideration a witness' appearance and demeanor. Surely, attorneys, in exercising peremptory challenges, have a right, also, to rely on appearance and demeanor exhibited, with other reasons as given by the district attorney.
 "This Court is satisfied that the district attorney has come forward with race-neutral reasons, as shown by the transcript, as to each peremptory challenge exercised in striking prospective jurors.
 "The ultimate goal of any Trial Court, Appellate Courts, and even the Supreme Court of the United States, is now, and has always been, to see that a defendant, and the people, in criminal cases receive a fair and impartial trial. One criteria as set out for reversal of other cases has been, had not a certain event occurred, then the result would have been different.
 "This Court is of the opinion that the defendant in these cases received a fair and impartial trial, justice having been accomplished, and regardless of whom the jurors were, the result would have been the same.
 "One learned scholar defined 'Peer' as meaning 'Citizens of the same general area and community as the defendant.' This Court is satisfied that the jury in these cases, both black and white, put aside their race and decided the issues on the facts and evidence introduced during the trial.
 "Out of the venire, the percent of blacks prior to striking was 22%. Subsequent to striking, the percentage of blacks was 17%. Taking the venire as a whole prior to striking, the percentage of blacks that remained on the jury trying these cases was slightly more than the jury that tried the case (.05%)." (R. 25-30)
We find that the following opinion by the Missouri Supreme Court is persuasive although not binding:
 "As a practical matter, the third element of the prima facie case under Batson
— 'facts and any other relevant circumstances raise an inference that the prosecutor used [his peremptory challenges] to exclude the veniremen from the petit jury on account of their race' — requires the trial court to consider the State's explanation of the manner in which it employed its challenges prior to making a final determination as to whether a prima facie case exists. We must therefore direct our trial judges to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges.
 "A judgment as to the validity of the State's 'neutral explanation' presents the trial judge with a particularly troubling task. Jury selection is, after all, an art and not a science. By their very nature, peremptory challenges require subjective evaluations of veniremen by counsel. Counsel must rely upon perceptions of attitudes based upon demeanor, gender, ethnic background, employment, marital status, age, economic status, social position, religion, and many other fundamental background facts. There is, of course, no assurance that perceptions drawn within the limited context of voir dire will be totally accurate. Counsel simply draws perceptions upon which he acts in determining the use of peremptory challenges.
 "Batson declares unacceptable only those perceptions based upon race. In so doing, Batson requires trial judges to measure the subjective decisions of counsel against a constitutional standard.
 "The trial judge's task is extremely difficult. One doubts that a prosecutor will admit that his decision to challenge a particular member of the venire was based upon race. The court is left with determining from the totality of circumstances *Page 376 
whether an articulated neutral explanation is but an excuse for improper discrimination. Batson thus requires the trial judge to embrace a participatory role in voir dire, noting the subtle nuance of both verbal and nonverbal communication from each member of the venire and from the prosecutor himself.
". . . .
 "Ultimately, however, the trial judge must focus all of the information and intuitive perceptions he has gathered to determine whether the prosecutor's use of his peremptory challenges proceeds from a racially discriminatory motive. We thus place great responsibility in our trial judges, confident that they, 'experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.' Batson, 476 U.S. at 96, 106 S.Ct. at 1723."
State v. Antwine, 743 S.W.2d 51, 64-66 (Mo. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1755, 100 L.Ed.2d 217
(1988).
We have carefully reviewed the trial judge's findings and acknowledge the fact that the trial judge is in the best position to determine whether the appellant here established a prima facie case of racial discrimination. We agree with the trial court that a prima facie case of discrimination was not established in this case.
Therefore, the trial judge properly overruled the appellant's objection to the petit jury which heard this case based on the State's striking of four black veniremen from the jury panel.
 II
The appellant alleges that he was illegally arrested and thus any evidence obtained by the search warrant which was later issued should have been suppressed.
During the suppression hearing, Sergeant Paul Price, Jr. of the Birmingham Police Department testified that Officers Charles Perrin and Daniel Phillips of the Birmingham Police Department told him that a car was found near the scene of another rape that occurred on July 31, 1986, the night of this appellant's arrest.
From the license plate of this automobile, the police determined that this vehicle was registered in this appellant's name. Perrin and Phillips went to the appellant's house to question him about his vehicle. According to Perrin and Phillips, the appellant went with them voluntarily back to the scene where the rape on July 31, 1986, had occurred. The appellant told Price that he went with the police to "get it cleared up." (R. 186)
After being identified by the victim of the rape which occurred on July 31, 1986, the appellant was arrested for the rape that occurred that night. Since the appellant went voluntarily with the police to the scene of the second rape, he was not in custody until he was formally placed under arrest. Thus, his arrest on this charge was not illegal. The search warrant for the appellant's house was for the purpose of obtaining evidence that would link the appellant to the rape which occurred on July 31, 1986. While searching the appellant's house, the police inadvertently came across evidence that linked this appellant to the crimes at issue, i.e. which occurred on April 26, 1986.
Based on this evidence the appellant was arrested for the offenses at bar.
The appellant does not contend his arrest for the offenses, which are the subject of this appeal, were illegal. Thus, we find that the appellant was not illegally arrested and the search warrant at issue was based on probable cause.Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535,75 L.Ed.2d 502 (1983); Segura v. United States,468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); see alsoMoore v. State, 457 So.2d 981 Ala.Cr.App.), cert. denied, 457 So.2d 981 (Ala. 1984), cert. denied,470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985), and authorities therein cited. Hence, the trial judge properly denied the appellant's motion to suppress the evidence discovered during the search of the appellant's home. *Page 377 
 III
The appellant maintains that the trial judge erred in allowing into evidence the testimony of two people regarding other crimes alleged to have been committed by this appellant.
 A
The appellant's defense was that he was at home when the crimes (i.e. rape-robbery) occurred on April 26, 1986.
In rebuttal, Gloria Brown testified to an incident that occurred on July 11, 1986, in the same area as the crimes in this case. A man identified as this appellant forced his way into a car in which Brown and her boyfriend were sitting. The appellant forced Brown's boyfriend in the trunk and began to drive the car. When the appellant recognized that Brown went to high school with him, the appellant panicked and ran off.
Since the appellant denied committing the offenses which are the subjects of this appeal, the identity of the perpetrator of these crimes was very much at issue.
The identity exception to the exclusion of evidence of other crimes allows the State to present evidence of other crimes which the defendant committed if it goes to show the identity of the person who commits the crimes with which he or she is now charged. C. Gamble, McElroy's AlabamaEvidence, § 70.10(22) (3d ed. 1977). The identity exception has "a more liberal definition when the defendant is charged with a sex crime." Brumfield v. State,453 So.2d 1097, 1101 (Ala.Cr.App. 1984); Hogue v.State, 54 Ala. App. 682, 312 So.2d 86 (1975), and cases cited therein; see also Smith v. State,409 So.2d 455 (Ala.Cr.App. 1981).
Clearly, Brown's testimony was sufficiently similar to the facts relating to the case at bar. Her testimony was relevant in the determination of the identity of the perpetrator of the crimes which occurred within such a short time span as in this case.
Therefore, the trial judge did not err in allowing Brown's testimony into evidence.
 B
During the presentation of his defense, the appellant testified that he was not near the cemetery, which is located near the Birmingham airport, on July 31, 1986. The trial judge then allowed Lisa Johnson to testify on rebuttal that she had seen the appellant near this cemetery on the night in question.
The trial judge then allowed the appellant to retake the stand. At this point, the appellant testified that he was only parked near the cemetery on July 31, 1986, because his car became too hot to drive and that he was only there until his automobile engine cooled off. Johnson was then allowed to retake the stand to rebut the appellant's assertion. Johnson testified that, on the night in question, the appellant came over to the vehicle she and her girlfriend were sitting on and pulled a gun on them. Johnson ran off and, when she returned, she saw her friend on the ground screaming.
The appellant contends that Johnson should not have been allowed to testify to what she saw this appellant do near the airport on July 31, 1986.
This appellant was the one to put his own actions on July 31, 1986 at issue. The State had every right to refute the appellant's testimony and present contradictory evidence.
Thus, the trial judge properly allowed Johnson's testimony into evidence.
For the reasons herein stated, this cause is due to be, and it is hereby, affirmed.
OPINION EXTENDED; AFFIRMED.
All the Judges concur. *Page 378