235 So.2d 917

Joe MITCHELL, alias

v.

STATE.

6 Div. 65.

Court of Criminal Appeals of Alabama.

May 26, 1970.

Rehearing Denied June 30, 1970.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

Robert R. Bryan, Birmingham, for appellant.

PRICE, Presiding Judge.

The appellant, Joe Mitchell, was convicted of having carnal knowledge of a girl under the age of twelve years. His punishment was fixed at thirty years in the penitentiary.

The evidence introduced on behalf of the state tended to show that on May 29, 1967, Terry Manson, age 11 years, was on her way to school, in the city of Birmingham, when defendant caught and raped her in an alley. The little girl first identified the defendant as the man who had sexual intercourse with her from photographs shown her by Detective Rhodes of the Birmingham Police Department. She positively identified him at the trial as the man who assaulted her.

The little girl testified she was taking a short cut to her school when she saw defendant running on the opposite side of a creek. He crossed the creek and stood in front of her. Defendant told her someone had stolen his mother's brown and white dog; that his mother wanted to see if .it was the witness who had stolen it and that his mother was crippled and couldn't walk. Witness told him she didn't steal the dog and was turning away when defendant caught the back of her dress, put his hand over her mouth, threw her to the ground and began hitting and choking her. The defendant was wearing a yellow windbreaker which zipped up the front and a pair of jeans.

The evidence for defendant tended to show that a Negro man, Henry Bell, was working in a house near the scene of the alleged assault. As he was setting work benches behind the house, he observed from a distance of twenty-one feet, a Negro man holding someone down in an alley-way. He testified at the trial the man whom he observed definitely was not the defendant.

Carolyn Mitchell, sister of defendant, testified she and defendant lived in the same house; that she saw him at 8:00 or 8:45 on May 29th; that he was wearing a black T-shirt, blue jeans and a Maroon windbreaker; that she saw him leave home around 9:00 and saw him in town around 11:00; that he had no .brown and white dog.

James L. Cotton, an employee of the neighborhood Youth Corps School Drop-out, testified defendant was employed by the City of Birmingham and that he saw him between 8:30 and twelve o'clock on the morning of May 29th when he brought a friend to get a job.

Defendant testified he left home around 9:00 A.M. and caught a ride to the neighborhood Youth Corps School Drop-out; that he was wearing a black Tee shirt, blue jeans and a windbreaker; that he had never owned a brown and white dog and had never worn a yellow or brown zip up front type jacket. He denied having .carnal knowledge of Terry Manson.

In rebuttal, three young girls, Annie Jean Stockdale, Debra Parker and Theresa Lynn Jordan, testified to attempted assaults upon them by defendant.

Annie Jean Stockdale, twelve years old, testified she and Gwendolyn Gore were on their way to summer school, near Daniel Payne College, in June, 1967, when defendant came out of the park with. a brown and white dog. He grabbed the girls and told them not to scream that he wasn't going to hurt them. They got away and reported the incident.

Debra Marie Parker, eleven years old, testified defendant grabbed her and her younger sister and told them if they moved or ran the dog would bite them. He had a brown and white dog with him. The girls escaped. This incident occurred in June, 1967. The girls were on their way to summer school at Bryant School, which is near Daniel Payne College.

Theresa Lynn Jordan, eight years old, testified that in April of 1967, she and her cousin, Gretal Pugh, were on their way to Bryant School when the defendant grabbed them. He began choking her cousin and put a knife on her wrist, but they started screaming and got away from him. Nothing was said about a dog.

The defendant denied assaulting either of these girls and testified he had never seen them before he was arrested.

The appellant insists the court committed reversible error in allowing evidence of other separate and distinct offenses alleged to have been attempted or committed by him. The trial judge instructed the jury in the following language:

"The only act that he is accused of here is the act in connection with Terry Manson. You have presented to you the testimony of three other little girls. The law provides that this testimony can come to you for a limited purpose. That limited

purpose is for the purpose of enabling you to look at that testimony purely and simply as it goes to the question of identification and nothing more. I can not accent this too much to you. He is charged with one offense only, and that being an offense against Terry Manson. Now, if it were otherwise it would be most difficult for any defendant to clear himself in any court. He is charged with one offense solely. The other comes to you purely and simply on the question of identification."

■ It is an elementary rule of law that proof of other crimes or offenses is not admissible against a defendant, unless such proof tends to establish motive, intent, scienter or identity of the accused. Williams v. State, 245 Ala. 32, 15 So.2d 572; Garner v. State, 269 Ala. 531, 114 So.2d 385. Here the identity of the person who committed the crime is the question in issue. Any testimony tending to establish that fact is competent evidence. Brasher v. State, 249 Ala. 96, 30 So.2d 31; Johnson v. State, 242 Ala. 278, 5 So.2d 632.

■ Appellant urges that the other occurrences should not have been allowed in evidence because they took place at a location several miles from the scene of the alalleged attack of Terry Manson; that Terry Manson was sexually assaulted and there was no indication of a sexual assault on the other girls. We are of opinion the occurrences were sufficiently similar in character to warrant their admission. Wilkins v. State, 29 Ala.App. 349, 197 So. 75; Johnson v. State, supra.

■ May 14, 1968, defendant filed motion to dismiss the indictment on the ground he had been denied a speedy trial. The record shows the indictment was returned July 14, 1967. Counsel was appointed August 31, 1967. Arraignment and plea of not guilty was had September 15, 1967. Trial was set for November 14, 1967. On February 16, 1968, present counsel was retained to represent defendant. A trial was had on March 6, 1968, but the jury failed to agree and a mistrial was declared. The trial which resulted in the conviction was had on June 12, 1968. It is averred in the motion that the cause was continued several times, but the occasion for the continuances, whether applied for by the defendant or state, or due to unavoidable circumstances does not appear in the record. Sample v. State, 138 Ala. 259, 36 So. 367. Furthermore, there is no showing of a previous request for an earlier trial. Ex parte State ex rel. Attorney General, 255 Ala. 443, 52 So.2d 158; Baggett v. State, 45 Ala.App. 320, 229 So.2d 819.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.

CATES, Judge (concurring).

I agree with all that our Presiding Judge has said save that I do not think the opinion of the Supreme Court in Brasher v. State, 249 Ala. 96, 30 So.2d 31, sheds any light on the instant case. If anything, it aids the defense:

" * * * that court [the Court of Appeals] erred in upholding the action of the trial court as to the evidence tending to show that Brasher previously had committed acts of perversion or degeneracy on the little five-year-old girl."

Mitchell's modus operandi of waylaying sub-teen girls on the way to school, twice with a dog, was relevant (1) to identify him and (2) to corroborate the prosecutrix's testimony. I would rest my reasoning more on Brown v. State, 37 Ala.App. 516, 74 So. 2d 273; and, more particularly, on McKenzie v. State, 250 Ala. 178, 33 So.2d 488.