Appellant George Brumfield was convicted of rape in case number 6 Div. 724 by a Tuscaloosa County jury and was sentenced to twenty years' imprisonment in the penitentiary. He was convicted by another Tuscaloosa County jury of rape in case number 6 Div. 737 and was sentenced to 150 years' imprisonment in the penitentiary. Counsel for appellant Brumfield has moved that he be allowed to consolidate the briefs in the two cases, showing that the victim in each case testified in the other case. The single issue on which both cases are appealed is: should the victim in the other case have been allowed to testify? The motion to consolidate was granted by Presiding Judge Bowen of this court.
Appellant contends on appeal that neither victim's testimony in the other's trial *Page 1099 
was probative. He contends that the testimony should not have been admitted into evidence under any exception to the rule prohibiting proof of crimes other than the one charged.
The state's evidence in one case tended to show that the victim in that case was a licensed practical nurse, who arrived home around 11:30 at night after working the 3 to 11 shift. She changed clothes to go out with friends. As she left her parents' home in Northport, Tuscaloosa County, Alabama, she saw the appellant, George Brumfield, holding a gun on her. He forced her to get into her car. They drove out to a subdivision where some houses were under construction. They got out of the car and the appellant told her to take her clothes off. The appellant laid a towel down on the pavement at the side of the road and they there engaged in sexual intercourse. As they were getting dressed, she had to ask him to give her her panties back. At his direction, she drove back to town by the same route and he got out of the car at the Five Points Baptist Church. The victim was uncertain whether to report the incident to the police or not. She spent that night at a girl friend's house and reported the rape incident the next morning. She went to a hospital and was examined by a physician.
She testified at trial that she was able to see the appellant by the dome light in the car when they got out of the car, although there were no street lights in the new subdivision. She testified that the appellant had a moustache. They lay on the pavement behind the car for about thirty minutes. The victim identified the appellant as the man who raped her, both from photographs and in court at trial.
The state's second witness in that case was a woman who had been raped four days before the nurse was raped. She testified that she was at the time of the rape a Tuscaloosa police officer, and that she had gotten home in the Woodland Park area of Tuscaloosa around 12:30 a.m. and had taken one of her dogs for a walk. Returning home about 1:00 a.m., she heard someone running behind her. It was a man who told her that he jogged every night. He pulled a gun on her and forced her to proceed into a wooded area in the residential neighborhood where they were. There he forced her to have sexual intercourse with him. She testified that later he handed her shorts and shirt to her. She identified George Brumfield as her attacker. She testified that she also learned later that he was staying in a Sheraton Inn near her walking route on the night of the rape.
There was other testimony that the appellant confessed to these crimes while in a Louisiana jail. Chief Deputy Sheriff Warren Miller of Tuscaloosa County, Alabama, went to Louisiana and took a statement from Brumfield about thirteen months after these rapes. Brumfield had, in the meantime, been working on an oil rig in Southeast Asia.
Should the victim in each case have been allowed to testify in the other case?
The distinguishing feature of the identity exception which justifies admission of evidence of other crimes is that the witness's positive identification of an assailant is probative of the perpetrator's identity in the case being tried. Otherwise, the evidence would tend to show only a propensity to commit crimes, or bad character. Such an identification only tends to prove identity if it provides an inference that the person who committed the first crime is also the one who committed the second. The manner of commission, or circumstances surrounding the commission, of the two incidents must bear some similarity or "novel and peculiar" features in order to provide the necessary inference.
Two statements of the general rule as to the identity exception have been relied on by this court. One is Wigmore's explanation of the source of the inference:
 "For simplicity's sake, the evidential circumstance may thus be spoken of as `a mark.' But in practice it rarely occurs that the evidential mark is a single
circumstance. The evidencing feature is usually a group of circumstances, which *Page 1100 
as a whole constitute a feature capable of being associated with a single object. Rarely can one circumstance alone be so inherently peculiar to a single object. It is by adding circumstance to circumstance that we obtain a composite feature or mark which as a whole cannot be supposed to be associated with more than a single object.
 "The process of construing an inference of identity thus usually consists in adding together a number of circumstances, each of which by itself might be a feature of many objects, but all of which together make it more probable than they coexist in a single object only." 2 Wigmore, Evidence, § 411 (Chadbourn rev. 1979) (Emphasis in original.)
The other is Judge McElroy's statement:
 "[T]he identity exception to the general exclusionary rule . . . contemplates the situation where the now-charged crime was committed in a novel and peculiar manner and the state is allowed to show that the accused has committed other similar offenses, in the same novel and peculiar manner, in order to show him the perpetrator of the now charged crime." C. Gamble, McElroy's Alabama Evidence, § 69.01 (8) (3d ed. 1977).
In some cases, the degree of similarity eliminates the requirement that there be an unusual modus operandi. In Thomasv. State, 409 So.2d 955 (Ala.Crim.App. 1981), we held that the robberies at issue were not "novel and peculiar" in the usual sense, but so resembled each other as to fall within the identity exception. There, the totality of the circumstances indicated "[t]he defendant had placed his mark or signature on each offense." Thomas, 409 So.2d at 956.
The identity exception may be used only when the defendant's identity has been put in issue (McElroy, id.). However, this issue can be injected in several ways. It is not necessary that a special plea be entered, nor that defense witnesses be called, to raise the issue of identity. Identity of the perpetrator is placed in issue when counsel for the defendant cross-examines a witness so as to challenge the witness's identification of the perpetrator. See Thomas, id. at 957, quoting Scott v. State, 150 Ala. 59, 43 So. 181 (1907). We find that the issue of identity was presented by the defendant by cross examination in this case.
How strong a similarity must there be, or how "novel" must the common modus operandi be, in order for evidence of the other crime(s) to be probative of identity? In Brewer v. State,440 So.2d 1155 (Ala.Crim.App. 1983), we reversed the appellant's conviction because the evidence of an attempted strangulation seven years earlier showed quite different circumstances. There, the victim's body was found under a bridge, bound and strangled. The victim of the earlier crime, however, was sitting in her car talking to appellant when he attacked and tried to choke her. In Nichols v. State,422 So.2d 804 (Ala.Crim.App. 1982), the prosecutrix and the prior victims all positively identified the appellant's voice, and all were either blindfolded or told not to look at the rapist as he raped them. We found the similarities justified admitting the evidence. In Smith v. State, 409 So.2d 455 (Ala.Crim.App. 1982), the defendant returned his rape victims home and apologized for raping them; the other incidents, first testified to by the defendant himself, were admitted.
In Bighames v. State, 440 So.2d 1231 (Ala.Crim.App. 1983), we noted the propriety of admitting evidence of prior crimes under the identity exception in a case where the abduction/rapes of UAB coeds showed the same methodology. The charged and prior abductions were so similar as to constitute, per Judge Bowen, "`signature crimes', having the accused's mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person," Bighames, id. at 1233.
For example, in Mitchell v. State, 45 Ala. App. 668,235 So.2d 917 (Ala.Crim.App. 1970), the appellant was charged with carnal knowledge of a female under twelve years of age. All the witnesses were pre-teenage *Page 1101 
girls who had been walking to school when appellant approached them, but no sexual contact had occurred with the witnesses. The court allowed evidence of prior incidents involving two other girls as "sufficiently similar" to the one prosecuted.
In Hayes v. State, 384 So.2d 623 (Ala.Crim.App. 1980), an assault with intent to murder case, the appellant suddenly reached around the female victim's back and applied pressure to her neck. He had done the same thing in an earlier assault on the witness. Both attacks occurred around 3:00 a.m. in the women's apartments. The similarity was held sufficient to admit the evidence of the earlier incident.
In Humphrey v. State, 54 Ala. App. 62, 304 So.2d 617
(Ala.Crim.App. 1974), anno. 2 A.L.R.4th 330, two of the three victims of Humphrey's assaults positively identified him. The only noteworthy "mark" or similarity linking the two rapes and one attempted rape was that the attacker walked unarmed into the victims' bedrooms to attack or rape them. The similarity was found sufficient to admit the evidence. Details of the crimes varied considerably.
The two Brumfield cases are well within the confines of the "sufficiently similar" and "novel and peculiar" category. It has been suggested, and with good reason, that the identity exception seems to have taken on a more liberal definition when the defendant is charged with a sex crime. The act of rape itself is more nearly an act of assault than a sexual act. To accost a strange woman and use a gun to force her to submit to sexual intercourse is in itself an unusual and extraordinary act. Brewer, supra, is factually distinguishable because of the seven year lapse of time between the incidents. The court in the present cases did not err in permitting each of the victims to testify in the case of the other.
Accordingly, these cases are due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 1305