538 So.2d 1226 (1988)
Ex parte State of Alabama (Two Cases).
(Re James Preston BOWDEN
v.
STATE).
(Re Roosevelt WATSON
v.
STATE).
87-38, 87-40.
Supreme Court of Alabama.
December 16, 1988.
*1227 Don Siegelman, Atty. Gen. and Jean Williams Brown, Asst. Atty. Gen., for petitioner.
William A. Short, Jr., Bessemer, for respondent Bowden.
J. Michael Williams, Sr., Auburn, for respondent Watson.
BEATTY, Justice.
We granted the State's petitions for writ of certiorari in these cases and have consolidated them to address the issues decided by the Court of Criminal Appeals in reliance upon, and in view of, this Court's decision in Anonymous v. State, 507 So.2d 972 (Ala.1987) (hereinafter referred to as "Anonymous"). In this opinion, we shall undertake to re-examine certain aspects of our decision in Anonymous. A brief summary of that decision follows.
The defendant in Anonymous was charged with and convicted of three counts of first degree rape and three counts of incest with one of his daughters, the prosecutrix, who was an adult at the time the alleged acts occurred. Over the defendant's objections, the prosecutrix was allowed to testify that the defendant had been sexually abusing her since she was five or six years old and that she had twice become pregnant by him, and that, on both occasions, he had forced her to have an abortion. The prosecutrix's sister, also an adult at the time of trial, was permitted to testify, over objection, that the defendant had sexually abused her since she was five or six years old and had repeatedly forced her to have sexual intercourse with him from the time she was 12 or 13 years old until she left home at age 17. She further testified that, like the prosecutrix, she had become pregnant by her father, the defendant, but that she gave birth to the child, a boy, who was 10 years old at the time of trial.
The Court of Criminal Appeals upheld the trial court's admission of the testimony by the prosecutrix and her sister concerning the history of forced sexual relations with the defendant. However, that court reversed and remanded the case, because it concluded that the testimony concerning the prosecutrix's pregnancies and abortions and the prosecutrix's sister's pregnancy and her giving birth to a son by the defendant, was inadmissible under Lee v. State, 246 Ala. 69, 18 So.2d 706 (1944). This Court granted the State's petition for writ of certiorari to consider the correctness of this latter determination by the Court of Criminal Appeals.
In its opinion, this Court stated the general exclusionary rule and reiterated the rationale behind it. We further recognized that "[t]his rationale notwithstanding," certain "other purpose" exceptions to this rule of exclusion exist, such as the accused's motive, intent, identity, or common plan, design, scheme, or system, in regard to all of which evidence may be introduced provided there is a real and open issue as to one or more of those "other purposes." Cofer v. State, 440 So.2d 1121 (Ala.1983). Applying the rule and its exceptions to the facts in Anonymous, we concluded that the Court of Criminal Appeals correctly determined that the evidence of the prosecutrix's pregnancy and her abortions and of the sister's pregnancy and resulting child was inadmissible. As to that evidence, we remarked: "There is simply no imaginable reason for the admission of this testimony other than to prove the defendant's *1228 bad character. This is, of course, not an acceptable purpose." 507 So.2d at 974.
The defendant did not file a cross-petition in Anonymous challenging the portion of the decision of the Court of Criminal Appeals upholding the admissibility of the prosecutrix's and her sister's testimony concerning their history of forced sexual relations with the defendant. However, we addressed ourselves to the correctness of that holding in response to the State's argument that, because evidence of the prosecutrix's and her sister's history of forced sexual relations with the defendant was admissible, so was the evidence relating to the resulting pregnancies and abortions (by the prosecutrix) and birth (by her sister). We concluded that the decision holding this evidence of their history of forced sexual relations admissible under the identity and intent exceptions to the general rule of exclusion was incorrect. We reasoned as follows:
"The identity of the person who actually committed the acts with which the defendant was charged was not at issue. The defendant did not argue that `someone else committed the acts with which he was charged'; instead, he merely denied that the acts ever occurred. Therefore, because there was no `real and open' issue concerning identity, the collateral acts could not be admissible as going toward such an issue. See Cofer, [440 So.2d 1121 (Ala.1983)]; [Ex parte] Killough, [438 So.2d 333 (Ala.1983)].
"Neither can the `intent' exception be applied in this case. Under §§ 13A-6-60 and -61, Code of 1975, rape in the first degree does not require any specific criminal intent. Similarly, no specific criminal intent, other than knowledge of relationship, is required under Code of 1975, § 13A-13-3, defining the crime of incest. The intent exception is simply not applicable in a case that requires no specific criminal intent as a prerequisite to conviction. See McElroy's, § 69.01(5) and cases cited therein. As was explained in Cofer, supra, any intent necessary to this type of crime could be inferred by the jury from the testimony about the act charged:
"`This intent may be inferred by the jury from the act itself. Parker v. State, 406 So.2d [1036] 1039. [(Ala.Cr.App.1981) ]. The prosecutrix testified that Cofer kissed her, removed some of her clothing, inserted his finger into her, and lay close to her. If the jury believed her testimony, it could infer that Cofer had the requisite intent and find him guilty of the offense. There is, therefore, no real and open issue about his intent, and the evidence of the prior rape was erroneously allowed to prove Cofer's intent.'
(Emphasis added.) 440 So.2d at 1124."
507 So.2d at 975. We further commented that, since there were no issues concerning the "intent" and "identity" exceptions to the general rule, "one cannot escape the conclusion that there exists no exception upon which the admissibility of the testimony concerning the prior sexual mistreatment of the defendant's daughters could be based." (Emphasis added.) 507 So.2d at 975.
It was in the wake of this Court's decision in Anonymous that the Court of Criminal Appeals decided the two cases sub judice. A brief recitation of the pertinent facts of each case and the issues arising therefrom follows.
In Bowden v. State, 538 So.2d 1224 (Ala. Crim.App.1987), the defendant, James Bowden, was convicted of the first degree rape of his minor daughter. At trial, the victim, who was then 15 years old, testified that, in addition to the incident for which the defendant was charged, he had made sexual advances toward her on numerous occasions in the past. The victim's 13-year-old sister was permitted to testify over objection that the defendant also had made sexual advances toward her around Christmas; however, she was uncertain of the year. On the authority of Anonymous, the Court of Criminal Appeals reversed the conviction and held that the testimony of the victim's sister was inadmissible.
*1229 In Watson v. State, 538 So.2d 1216 (Ala. Crim.App.1987), the defendant, Roosevelt Watson, was convicted of the first degree rape of one of his daughters under the age of 12. At trial, the victim's mother was permitted to testify over objection that her oldest daughter, the victim's sister, told her (the mother) that on two or three occasions the defendant had also forced her (the sister) to have sex with him and that he had impregnated her. The victim's mother also testified that, like the victim, the sister had indeed become pregnant, but that the child was stillborn on August 27 or 28, 1984, approximately one week before the victim's child was born on September 2, 1984. The Court of Criminal Appeals quoted the following excerpt from the mother's testimony as to her daughters' explanations of their pregnancies:
"`Q. They told you how they got pregnant?
"`A. Yes.
"`Q. What did they say to you?
"`....
"`A. They said that their father would come upstairs on nights that he stayed there at the house. He would come upstairs and get them and take them back downstairs and force them to lay down on the floor. And tell them that if they didn't that he would kill them.
"`Q. Did they tell you how many times he forced them to do this?
"`A. Yes. As many as two or three times each. [The prosecutrix's sister] said one night she was up in her bed asleep, and he came upstairs and got her and took her downstairs and forced her on the couch at gunpoint and had intercourse with her.'"
538 So.2d at 1218. The victim's mother further testified as follows concerning a scene or an incident she witnessed involving the defendant and the victim's sister:
"`Q. Now, Ms. Watson; I asked you earlier about the date of March 22, 1983. Can you tell the jury what occurred on that day?
"`A. Yes. I was downstairs
"`[Objection interposed.]
"`Q. Ms. Watson, can you relate what occurred on that day to the jury, please, ma'am?
"`A. Yes. I was downstairs, down we had an upstairs apartment. And I was downstairs. And I went upstairs to use the bathroom. And I saw Mr. Watson and my daughter Shirley in her bedroom. Mr. Watson had his pants below, down to his ankles, and Shirley was laying down in the bed.
"`Q. Did Shirley have on any clothes?
"`A. As far as I could tell, no.
"`Q. Did you ask Mr. Watson what they were going at that time?
"`A. Yes.
"`Q. What did Mr. Watson say?
"`A. He said that they were just playing, that it was nothing.
"`Q. That they weren't doing anything?
"`A. Yes.'" 538 So.2d at 1218.
The defendant argued on appeal that the trial court erred in admitting the mother's hearsay testimony that the defendant had had sex with, and had impregnated, the victim's sister, and her testimony concerning that pregnancy, the stillbirth, and the March 22, 1983, incident related in the above quoted testimony.
Although the defendant in Watson did not argue that the trial court erred in admitting evidence of the victim's pregnancy and subsequent delivery, which was alleged to have been a consequence of the rape, the Court of Criminal Appeals held that this evidence was admissible under the following rule:
"In ... any ... criminal proceeding involving a charge of sexual intercourse with a woman, the fact of the female's having given birth to a child in consequence of such intercourse is admissible. In such criminal charges as adultery, carnal knowledge and incest, for example, it has been held that evidence that a child was born to the woman involved, if the laws of nature would suggest that the time of conception was about the time of the claimed act of sexual intercourse, is *1230 admissible.... It should be noted, however, that if the birth of the child occurred at such a time that conception at the time of the claimed intercourse was impossible, then proof of such birth is not admissible as tending to show the claimed intercourse."
C. Gamble, McElroy's Alabama Evidence § 51.01(1) (3d ed. 1977). The Court of Criminal Appeals determined that our decision in Anonymous did not affect the above rule nor those cases cited by that Court in which this rule was applied.[1] The court reasoned that in Anonymous this Court held inadmissible the testimony concerning collateral sexual relations between the victim and the defendant, and thus the testimony pertaining to the victim's pregnancies and abortions resulting from those collateral acts was also held to be inadmissible. Unlike the pregnancy in Anonymous, the victim's pregnancy in this case is claimed to have resulted from the rape with which the defendant was charged. The Court, therefore, concluded that the evidence of the victim's pregnancy and subsequent delivery of a child was admissible.[2]
Making a further distinction between this case and Anonymous, the Court of Criminal Appeals held that the testimony concerning the defendant's rape of the victim's sister was also admissible. The court reasoned as follows in its opinion, from which we quote at length:
"`We know as a scientific fact that when a child is born there has been an act of sexual intercourse, and as a matter of common knowledge we also know that the period of normal gestation is approximately 270 days.' [Davis [v. State ], 20 Ala.App. [463] at 464, 103 So. [73] at 74 (1925) ]. In light of the properly admitted fact of the prosecutrix's pregnancy, which allegedly resulted from the charged act, and Watson's defense that he was not present on the alleged night of conception and, thus, did not commit the crime, the question of the rapist's identity was put into issue. See Johnson v. State, 242 Ala. 278, 280, 5 So.2d 632, 634 (1941), cert. denied, 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763 (1942); Beavers v. State, 511 So.2d 951 (Ala.Cr.App.1987); Smith v. State, 409 So.2d 455 (Ala.Cr.App.1981). It is upon this conclusion that we again distinguish the holdings of Anonymous. In Anonymous, the court found the following:
"`The identity of the person who actually committed the acts with which the defendant was charged was not at issue. The defendant did not argue that "someone else committed the acts with which he was charged"; instead, he merely denied that the acts ever occurred. Therefore, because there was no "real and open" issue concerning identity, the collateral acts could not be admissible as going toward such an issue.'
"507 So.2d at 973. Under the facts before us, one being the prosecutrix's pregnancy approximately nine months after the alleged offense, it cannot be argued that the charged act never occurred; thus, the evidence presented a `real and open' issue concerning who raped the prosecutrix.

"It is upon our finding that the jury was presented with the question of the rapist's identity that we base our conclusion that evidence of Watson's sexual mistreatment of the prosecutrix's sister was admissible. We find this evidence to have been admissible under the exception `relevancy in various particular crimes.' See Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law, 35 Ala.L.Rev. 241, 248 (1984), for a list of *1231 exceptions to the general exclusionary rule. The following has been observed in regard to this exception:
"`Another exception to the general exclusionary rule revolves around prosecutions for certain specific crimes. Actually, this exception is more an amalgam of several exceptions than a separate and distinct exception on its own. The most apparent of the specific offenses involved in this exception are sex crimes. As a general proposition, courts seem more willing to admit evidence of collateral acts when sex crimes are involved.... A number of decisions have ... approved the introduction of evidence of the defendant's sexual activity with persons other than the victim in carnal knowledge, rape, and incest cases.'
"Id. at 265-66 (footnotes omitted). In the instant case, we find this exception, [see fn. 3, at end of quote] under which the evidence of Watson's sexual mistreatment of the prosecutrix's sister was admissible, to be an amalgam of the `identity' exception and the `common plan, scheme or system' exception. [see fn. 4, at end of quote] We find the following to be apropos to the application of the `identity' exception:
"`One of the primary exceptions for allowing evidence of prior and subsequent crimes is when such other crimes go to show the identity of the perpetrator of the now charged offense. In other portions of this text we have seen that this exception traditionally has been applied only when the person who committed the now-charged crime did so in a novel or peculiar manner. It is reasoned that this should permit the prosecution to show that the accused committed other similar offenses in the same novel or peculiar manner. However, the identity exception seems to have taken on a more liberal definition when the defendant is charged with a sex crime such as rape. In such cases the courts seem to allow proof of other similar crimes by the accused if they, in any way, go to identify him as the person who committed the now-charged crime.'
"Gamble, [McElroy's Alabama Evidence], at § 70.01(22)(b) (footnote omitted). See also Potts v. State, 500 So.2d 1318, 1320 (Ala.Cr.App.1986) (wherein the court observed: `Courts have been somewhat more willing to receive evidence of prior bad acts in cases of sex crimes'); Brumfield v. State, 453 So.2d 1097 (Ala.Cr.App.1984) (wherein the court noted that a liberal definition of the identity exception might be appropriate as applied to sex crimes); Weatherford v. State, 369 So.2d 863, 870 (Ala.Cr.App.); cert denied, 369 So.2d 873 (Ala.1979) (wherein the court quoted from Gamble, supra, at § 70.01(22)(b)).
"Under the instant facts, we consider the evidence of Watson's sexual acts with the prosecutrix's sister to fall within these exceptions because of similarity in circumstances. The evidence does not fall within the prohibitive rule of Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947), that evidence of collateral acts committed by the accused with third persons cannot be admitted, under the pretext that it is relevant to the question of identity, when the `evidence does nothing more than show the accused's inclination or disposition to commit that type of crime or to show his sexual depravity.' Id., at 99, 30 So.2d at 33. Rather, we find that Watson's acts against the prosecutrix's sister `are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than to show the defendant's bad character or moral delinquency.' Id. at 100, 30 So.2d at 35. See, e.g., Brasher v. State (wherein the court held that evidence of the defendant's alleged attempted rape of a 16-year-old female was admissible in the prosecution of the defendant for allegedly raping a 14-year-old *1232 female, because the evidence was relevant to the question of identity); Coleman v. State, 491 So.2d 1086, 1087 (Ala. Cr.App.1986) (wherein the court held that evidence of the defendant's sexual abuse of his four step-daughters, who lived with him and ranged in age from thirteen months to ten years, was admissible in his prosecution for first degree rape of his six-year-old step-daughter, because this evidence would show `plan, scheme, and intent'); Mitchell v. State, 45 Ala. App. 668, 235 So.2d 917 (1970) (wherein the court in reviewing a conviction for carnal knowledge, held properly admissible the testimony of three other girls under 12 to the effect that the defendant had attempted to sexually assault them); Sellers v. State, 41 Ala.App. 612, 145 So.2d 853 (1962) (wherein the court held that testimony of the prosecutrix's sister that the defendant, their father, had intercourse with her was admissible on the apparent ground that it fell within the `plan, design, scheme or system' exception, for the court noted that the testimony established a `pattern' of sexual behavior into which the alleged crime fit).
"[Footnote 3:] Another possible expression of this exception as applied to prosecution for sex offenses, is as follows:
"`To show a passion or propensity for unusual and abnormal sexual relations. Initially, proof of other sex crimes always was confined to offenses involving the same parties, but a number of jurisdictions now admit other sex offenses with other persons, at least as to offenses involving sexual aberrations.'
"McCormick on Evidence § 190 at 560-61 (3d ed. 1984) (footnotes omitted). In a note to the above passage, the author observed the following: `Some courts do not admit evidence of sex crimes with other victims as revealing an incriminating propensity, but achieve a similar result by stretching to find other exceptions to the rule against extrinsic character evidence applicable.' Id. at n. 24.
"[Footnote 4:] `This exception generally goes to the issue of the identity of the defendant. In fact, the identity exception and the common scheme or plan exception are often mentioned in conjunction with each other in the cases.' Schroeder, supra, at 256."
(Emphasis added.) 538 So.2d at 1221.
However, on the authority of Lee, supra, and the application of Lee in Sellers v. State, 41 Ala.App. 612, 145 So.2d 853 (1962), the Court of Criminal Appeals concluded that, even though the testimony that the defendant had also raped the victim's sister was admissible, the testimony that she had thereby become pregnant and the child was stillborn was inadmissible. Accordingly, that court reversed the conviction and remanded the case for a new trial.
"In the interest of judicial economy," the Court of Criminal Appeals undertook to discuss the apparent overruling effect of this Court's decision in Anonymous as to a very long line of cases holding that evidence of collateral sexual acts by the defendant upon the prosecutrix may be introduced by the State to prove motive, and other material and relevant purposes, such as common plan, scheme, design, or system, all of which constitute exceptions to the general rule of exclusion. The Court of Criminal Appeals suggests that, from the face of our decision in Anonymous, it appears that the only exceptions that remain applicable in the prosecutions of sex crimes are the identity and intent exceptions. It is this commentary by the Court of Criminal Appeals that prompts our reexamination of the Anonymous decision.
We begin by pointing out that, as demonstrated by this Court's decisions in Anonymous and Ex parte Cofer, supra, there is no longer any basis for the view that, in the prosecution of sex crimes, the Alabama courts will be more liberal in their extensions of the exceptions to the general rule of exclusion. See C. Gamble, Character Evidence: A Comprehensive Approach, at *1233 45-46 (1987). See also Beavers v. State, 511 So.2d 951, 955 (Ala.Crim.App.1987) (Bowen, P.J., dissenting). In the words of one commentator, "[w]ith each succeeding decision, ... [this] Court makes it clear that any offered `other purpose' must be a material issue." (Emphasis added.) Gamble, Character Evidence, supra, at 37. That is, the "other purpose" must be a material element of the crime charged about which there is a "real and open issue," or the "other purpose" must be rendered material by virtue of other circumstances or evidence present in the case.
However, we wish to clarify that, just as we do not liberally extend the exceptions to the rule of exclusion in sex crime prosecutions, neither do we intend that their applicability be more narrowly restricted in such cases, notwithstanding dicta in Anonymous to the contrary. The same factors for determining the admissibility of collateral acts of misconduct by the accused in other types of prosecutions are to be applied in determining the admissibility of collateral acts of sexual misconduct in the prosecution of sex crimes. Which is to say that, provided the test for materiality is met, evidence of collateral crimes or misconduct may be admitted. Of necessity, this analysis is case by case.
We recognize that there is authority, perhaps even a modern trend, that supports the view that, in a prosecution for a sex crime, evidence of similar collateral sexual misconduct is admissible for the purpose of showing that the accused has the propensity to commit the sex crime for which he is charged. See Annot., 77 A.L.R.2d 841 (1961), and Later Case Service (1986 and 1987 Supp.); and Gamble, Character Evidence, supra, at 46. (See also Annot., 88 A.L.R.3d 8 (1978), and State v. Maestas, 224 N.W.2d 248 (Iowa 1974).) However, this Court has never embraced such a rule, which itself constitutes "an exception to the general rule exclud[ing] evidence of character when offered to prove that the accused acted in keeping therewith on the occasion in question." Gamble, Character Evidence, supra, at 46. Nevertheless, in response to the criticism that, in cases involving sex crimes, the Alabama courts have been more liberal in their application of the exceptions to the general rule of exclusion, it is worth noting that "[s]ome courts have taken the view that the considerations justifying the reception of evidence of other similar offenses [i.e., the exceptions to the rule of exclusion] are peculiarly applicable in prosecutions for sexual offenses, or at least as to certain types of such offenses." (Emphasis added.) Annot., supra, 77 A.L.R.2d at 848-49. This observation seems particularly apropos of the sexual offenses of incest and the accused's rape or sexual abuse of his children.
We turn now to an examination of the specific issues presented by these cases and the pertinent Alabama authorities. The first issue, although not raised in either of these cases or in Anonymous, concerns the admissibility of evidence establishing acts of sexual misconduct perpetrated by the accused against the prosecutrix (i.e., the victim) prior to the rape for which the accused was charged. In each of the present cases, the defendant was charged with the first degree rape of one of his minor daughters; however in neither was he charged with the crime of incest. The defendant in Anonymous was charged with the first degree rape of, and also incest involving, an adult daughter. In our analysis of the State's argument regarding the admissibility of the victim's and the victim's sister's testimony in Anonymous, this Court concluded that neither the victim's nor her sister's testimony concerning their prior sexual mistreatment by the defendant was admissible.
As it was not raised in Bowden, supra, the Court of Criminal Appeals did not find any need to address the admissibility of the victim's testimony as to the acts of prior sexual misconduct directed toward her by the defendant. However, as previously noted, in Watson, supra, that Court discussed this issue, although not raised, as *1234 guidance for the trial court on remand. After its lengthy analysis of Anonymous and the effect of that case on decisions to the contrary, the court distinguished Watson from Anonymous and held as follows:
"[I]n applying this Anonymous ruling to the facts of the instant case, we view it not as a prohibition to the introduction of the victim's testimony of prior sexual acts committed by Watson, for, although it apparently cannot be introduced as evidence of motive, it is admissible under the same exceptions [i.e., identity] that permit introduction of the evidence of Watson's assaults against the prosecutrix's sister." (Emphasis added.)
538 So.2d at 1220.
We agree with the Court of Criminal Appeals that, because there was a real and open issue as to the rapist's identity, the trial court did not err in admitting evidence of the defendant's prior rapes of the prosecutrix and her sister. In Ex parte Darby, 516 So.2d 786, 788-89 (Ala.1987), this Court stated the following with regard to the exceptions to the rule of exclusion, particularly the identity exception:
"Exceptions come into play where there is a question of the identity of the defendant as the perpetrator of the alleged crime or where there is a question of intent, motive, physical capacity, or knowledge. The identity exception allows evidence of uniquely similar prior crimes of which the defendant has been convicted so as to provide circumstantial evidence that the defendant in fact committed the crime being prosecuted. In other words, where the modus operandi of the crime at trial is characteristically similar to that used by the defendant on prior occasions, evidence of the prior crimes may be used to connect the defendant to the crime at issue."
Unlike the defense in Anonymous, Watson's defense in this case was essentially that "`someone else committed the acts with which he was charged,'" because he claimed that he was not at his daughter's (the victim's) home on the night he was alleged to have raped and impregnated her. Watson, 538 So.2d at 1220. In Anonymous, the defendant "merely denied that the acts ever occurred." 507 So.2d at 975. Thus, as to the identity issue, Watson is distinguishable from Anonymous.
Additionally, in view of this Court's clarification herein of the scope of our decision in Anonymous, we further conclude that, provided a proper showing of materiality is made, evidence of collateral sexual misconduct would be admissible to prove a material "other purpose." As noted by the Court of Criminal Appeals, in numerous decisions this Court has uniformly held evidence of collateral acts of sexual misconduct committed against the prosecutrix by the accused to be admissible for a variety of other purposes, one of which is the accused's motive, often termed the accused's "sexual passion for the victim." This Court's most recent recognition of that line of authority was in Ex parte Deason, 363 So.2d 1001 (Ala.1978), which was reaffirmed but distinguished in Ex parte Cofer, 440 So.2d at 1124. In Ex parte Deason, we stated the following:
"In opposition to the petitioner's position, the State has viewed the problem as one of evidence law, referring us to that portion of the opinion of the Court of Criminal Appeals in which McElroy's Alabama Evidence, § 45.11(3) (3d Ed. 1977) is cited for the proposition that in a carnal knowledge case the prosecution may introduce proof of sexual relations between the accused and the prosecutrix before and after the act on which the prosecution is based. That is a correct proposition of evidence law. The reason behind the admissibility of such acts was discussed by Mr. Justice Brown in Harrison v. State, 235 Ala. 1, 2, 178 So. 458, 459 (1937):
"`[w]e hold that the weight of authority sustains the proposition that it is permissible for the prosecutors to offer evidence of such acts occurring before and after the alleged act on which the indictment is based, as tending to *1235 sustain the principal charge by showing the relation and intimacy of the parties.' (citations omitted) (emphasis added)
"One of the cases cited as authority allowed proof of subsequent sexual conduct upon the same child because:
"`[i]t went to show the existence of relations between her and the defendant which tended to make the commission of the act of a similar nature, which was the subject of the charge, more probable, and so to confirm her previous testimony. That the accused was under the influence of a sexual passion in respect to this girl in July [the subsequent act], which led him to take advantage of her youth in order to gratify it, was logically relevant to the question whether he gave rein, in the same manner, to such passion in respect to her, three months before [the principal offense].' (emphasis added)
"He added:
"`If such subsequent acts are too remotely related to the act upon which the prosecution is based, in point of time, to be without probative force, such evidence should not be admitted.' (citation omitted) (emphasis added)
"That discussion clearly demonstrates that the admissibility of sexual occurrences before and after the one charged in the indictment is based upon conditions of relevancy, that is, whether they are probative of the main charge."
363 So.2d at 1004-05. With facts similar to those in Watson, Deason was charged with carnally knowing his 12-year-old stepdaughter in January 1975. At trial, the victim testified that the defendant had done the same thing to her on numerous occasions since she was nine years old. We concluded that "[p]roof of these other instances was relevant to the commission of the January offense." 363 So.2d at 1006.
Because the intent exception is rarely applicable in prosecutions for first degree rape, under our decisions in Anonymous and Ex parte Cofer, it is important to distinguish between intent and motive, two elements that are often confused. "These are not the same in law. Intent is the ripened purpose to effect a result; while motive is the moving power which leads the mind to desire the result and form the purpose." Fuller v. State, 269 Ala. 312, 336, 113 So.2d 153, 175 (1959). Motive is defined as "an inducement, or that which leads or tempts the mind to do or commit the crime charged." Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has also been described as "that state of mind which works to `supply the reason that nudges the will and prods the mind to indulge the criminal intent.'" Gamble, Character Evidence, supra, at 42.
Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Crim.App. 1986). "`It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.' McAdory v. State, 62 Ala. 154." Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921).
Thus, where, as in these cases, a defendant is charged with the first degree rape of his minor daughter, evidence establishing that he had raped and/or committed acts of sexual abuse toward her prior to or subsequent to the offense for which he is charged, is admissible to prove his motive in committing the charged offense. Such evidence tends to establish the inducement (i.e., unnatural sexual passion for his child) that led him to rape or molest her.
However, where the defendant is not charged with the offense of incest, as neither Bowden nor Watson was, it becomes questionable whether evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping the victim, also his child.
*1236 In Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947) (a charge of statutory rape), cited with approval in Anonymous, this Court recognized:
"The rule in this jurisdiction, as it is generally, is that in some sexual cases, such as fornication, statutory rape and sodomy, other similar acts between the same parties are admissible as tending to sustain the principal charge by showing the relation and intimacy of the parties. Lawson and Swinney v. State, 20 Ala. 65, 56 Am.Dec. 182; Harrison v. State, 235 Ala. 1, 178 So. 458 [(1937)]; Brown v. State, 32 Ala.App. 131, 22 So.2d 445 [(1945)]."
(Emphasis added.) 249 Ala. at 99, 30 So.2d at 33. Nevertheless, the Brasher Court found that those cases were inapplicable to that case "because of the fact that here different parties were involved in the two offenses and there is no similarity in the acts alleged to have been commited other than that they were both of a sexual nature." (Emphasis added.) Id.
Unlike the victims in the present cases and in Anonymous, neither victim in Brasher was the accused's child. The Court in Brasher explained further the dissimilarities between the crime charged and the collateral sexual misconduct with a different and younger victim:
"In the instant case Brasher is charged with the commission of a normal sexual act, illegal because of the age of the girl. The evidence as to his relationship with the five-year-old girl showed an abnormal sexual act, an act of perversion and depravity. The two acts were separate and distinct. They were in no sense intermixed or blended, one with the other, or connected so as to form parts of the same criminal transaction. The act alleged to have been committed on the little five-year-old girl was certainly not of the res gestae of the offense for which he was being tried. There was no similarity in the manner, location or circumstances in which the two offenses were committed such as to support a logical inference that the same man committed both acts."
249 Ala. at 98, 30 So.2d at 33.
In Anonymous, this Court implicitly followed the case of Lee, supra, in holding inadmissible the evidence that one of the prosecutrix's sisters had become pregnant as a result of a rape by their father (the defendant), who had also forced her to procure an abortion. In Lee, the defendant was charged with "carnally know[ing], or abuse in the attempt to carnally know Elese Lee, a girl under the age of twelve years." 246 Ala. at 71, 18 So.2d at 707. Lee was not charged with incest involving Elese Lee, his daughter. The defendant also had three other daughters: Ruby, Mary Ruth, and Jewel. Over objection, all three testified that, prior to his abuse of Elese, the defendant had sexually abused them by putting his hands on their breasts and genitalia. Ruby further testified that on many occasions the defendant had forced her to actually have sexual intercourse with him. Listing numerous decisions, the Court in Lee held that this testimony by the defendant's three daughters as to these collateral acts was admissible "as bearing upon the motive, intent, scienter, identity, etc." Id.
Three years later, the Supreme Court decided Brasher, supra. Without citing Lee, the Court in Brasher discussed with approval an early California decision holding that, in a prosecution for committing incest with one daughter, evidence that the defendant also committed incest with another daughter is inadmissible:
"One Letoile was convicted of the crime of incest committed with his eldest daughter. The State proved that Letoile had committed a similar act with another daughter. His conviction was reversed in the case of People v. Letoile, 31 Cal.App. 166, 159 P. 1057, wherein it is said: `Evidence was thus placed before the jury not only by the prosecuting witness that the defendant had committed the crime of incest with her, but also by the daughter Mary that defendant had *1237 committed a like crime with her. Unless this was corroboration of Lucy's testimony respecting the offense charged in this action, there is no corroboration in the record. The jury may have believed Lucy's testimony as to the defendant's acts, but that those acts were done with her consent, and that she was an accomplice therein; and, in that event, their verdict was necessarily based also upon the testimony of Mary which tended to show the defendant's disposition to commit that kind of a crime by showing that he had committed such a crime with a person other than the one named in the information. The decisions in this state are uniform to the effect that such evidence in prosecutions for crimes of this class is not admissible.' To like effect is the case of Wentz v. State, 159 Md. 161, 150 A. 278 [(1930)]." (Emphasis added.)
249 Ala. at 101, 30 So.2d at 35-36. However, approximately 22 years later, in the case of Durham v. State, 47 Ala.App. 89, 250 So.2d 693 (1969), then-Judge Almon, writing for the Court of Criminal Appeals, expressly relied upon Lee and concluded that it was permissible to allow
"Rita Nelson, age thirteen at the time of trial and sister of the prosecutrix ... to testify over appellant's objection that in March and May of 1966 her stepfather attempted to have sexual intercourse with her but could not accomplish his purpose because she was too small. An almost identical situation is found in Lee v. State, 246 Ala. 69, 18 So.2d 706...." (Emphasis added.)
47 Ala.App. at 90, 250 So.2d at 695. Like these defendants, the defendant in Durham was not charged with incest; he was charged with carnal knowledge of a girl over 12 but under 16. The Durham court also held that the prosecutrix's testimony regarding a rape by her stepfather subsequent to the crime for which he was charged, was admissible, quoting at length from Harrison v. State, 235 Ala. 1, 178 So. 458 (1937), also cited by the court in Brasher, and by this Court in Ex parte Deason, supra.
This Court initially denied the petition for certiorari in Durham, but issued the writ after granting the defendant's application for rehearing. However, "[a]fter further deliberation," this Court vacated the order granting rehearing and the order granting the petition for writ of certiorari, and ordered that "[t]he judgment of the Court of Criminal Appeals stands affirmed." Durham v. State, 287 Ala. 731, 732, 250 So.2d 696, 697 (1971). Chief Justice Heflin dissented, relying on Brasher for the proposition that the prosecutrix's sister's testimony regarding a collateral act of sexual misconduct was inadmissible. Chief Justice Heflin remarked that a majority of the Court agreed but felt that the petitioner had failed to properly amend his petition to argue that the rationale of Brasher should control over Lee.
Not until Anonymous had this Court endeavored to "resolve" what may appear to be a conflict in these decisions. Admittedly, Lee, supra, lacks any analysis of the issue regarding the admissibility of the prosecutrix's sister's testimony as to collateral sexual offenses perpetrated upon the girls by their father, the accused. Furthermore, the omission in Brasher of any discussion on these issues decided in Lee only three years prior thereto, and the later failed attempt in Ex parte Durham to deal with the problem, further served to cast doubt on the controlling effect of the broadly worded resolution offered by the Court in Anonymous.
We now hold as follows: It may well be, when the third party against whom the defendant is claimed to have committed a collateral sexual offense is the defendant's child, that collateral offense evidence is more relevant in proving the material "other purpose(s)" for which it is offered in a sex crime prosecution than would be evidence of other third party offenses. This of course depends upon (1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the *1238 collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered. Thus, as previously noted, the analysis must be case by case.
In Watson, the Court of Criminal Appeals correctly held that because identity was in issue in that case, the victim's and her sister's testimony regarding prior sexual offenses was properly admitted to prove the identity of the rapist. We also agree, however, that evidence of the sister's pregnancy and subsequent stillbirth would "tend to unduly multiply the issues and to divert the minds of the jury from the main issue." Lee, 246 Ala. at 71, 18 So.2d at 707; Sellers v. State, 41 Ala.App. 612, 145 So.2d 853 (1962). Therefore, the judgment of the Court of Criminal Appeals in Watson is due to be affirmed.
In Bowden, the Court of Criminal Appeals also correctly concluded that identity was not in issue in that case, and, therefore, the sister's testimony that the accused had made numerous sexual advances toward her was inadmissible to prove identity. The State has not demonstrated for what other purpose such evidence would have been admissible in this case. Therefore, the judgment in Bowden is also due to be affirmed.
Let the judgments be affirmed.
87-38 AFFIRMED.
87-40 AFFIRMED.
TORBERT, C.J., and ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
MADDOX and STEAGALL, JJ., concur in part and dissent in part, with opinion by MADDOX, J.
JONES, J., not sitting.
MADDOX, Justice (concurring in part, dissenting in part).
The holding of the majority in these two cases can be summed up in the following sentence in the majority opinion: "The same factors for determining the admissibility of collateral acts of misconduct by the accused in other types of prosecutions are to be applied in determining the admissibility of collateral acts of sexual misconduct in the prosecution of sex crimes." (Emphasis in majority opinion.) This is not current Alabama law, and should not be.
As the majority recognizes, "there is authority, perhaps even a modern trend, that supports the view that, in a prosecution for a sex crime, evidence of similar collateral sexual misconduct is admissible for the purpose of showing that the accused has the propensity to commit the sex crime for which he is charged." The majority, citing Anonymous v. State, 507 So.2d 972 (Ala. 1987), and Ex parte Cofer, 440 So.2d 1121 (Ala.1983), nevertheless concludes that, "there is no longer any basis for the view that, in the prosecution of sex crimes, the Alabama courts will be more liberal in their extensions of the exceptions to the general rule of exclusion."
It appears to me that the majority intends to hold, and does hold, that the identity and intent exceptions may be the only viable exceptions now available in sex offense cases in Alabama. That, in my opinion, is a departure from the rule of evidence established not only in Alabama, but in other jurisdictions as well. As McCormick points out in his work, McCormick on Evidence, § 190, pp. 560-61 (3d ed.1984), "Initially, proof of other sex crimes always was confined to offenses involving the same parties, but a number of jurisdictions now admit other sex offenses with other persons, at least as to offenses involving sexual aberrations." Of course, the majority candidly admits that the "modern trend" is to admit evidence of collateral sexual misconduct.
A sex offender's "passion or propensity" for sexual misconduct is a primary motive for the commission of the crime charged, and Alabama's courts, in my opinion, in a long line of cases, had allowed proof of such collateral misconduct as an exception *1239 to the general rule of exclusion. Because I believe that Alabama has long followed the rule of evidence that would permit the admission of evidence of collateral sexual misconduct that shows a "passion or propensity" to commit the crime charged, I believe that the majority errs in refusing to permit the evidence to be admitted in Bowden. Consequently, I must respectfully dissent in that case, and concur in the result only in Watson.
Before Anonymous muddied the water, the rule was clear. In Lee v. State, 246 Ala. 69, 18 So.2d 706 (1944), this Court allowed three sisters of the prosecutrix to testify that the defendant had also sexually abused them. This Court discussed the exceptions to the general rule of exclusion and listed some of them as "motive, intent, scienter, identity, etc." There, the Court upheld the admission of the testimony, without giving a specific exception that applied to the evidence in question. Here, the majority seems to summarily dismiss motive as a viable exception to the general exclusionary rule "where the defendant is not charged with the offense of incest." The majority states that "it becomes questionable whether evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping the victim, also his child." (Emphasis in majority opinion.) Why the extra charge of incest is necessary to allow motive to be shown puzzles me, because the defendant's motive at the time of the crime does not change with a prosecutor's decision to add an incest charge or not. Besides, such a holding is clearly contrary to Lee, where motive was set forth as a legitimate exception even though Lee was not charged with incest either.
Several courts have correctly pointed out that a sex offender's "passion or propensity" for sexual misconduct is a primary motive for the commission of the crime charged. "The emotional predisposition or passion involved in raping one little girl would seem to be the same as that involved in raping another." Bracey v. United States, 142 F.2d 85, 88 (D.C.Cir.), cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). As the Supreme Court of Wisconsin put it in Day v. State, 92 Wis.2d 392, 404, 284 N.W.2d 666, 672 (1979):
"The court in [State v.] Tarrell [74 Wis. 2d 647, 247 N.W.2d 696 (1976),] felt that the prior acts
"`... demonstrated a propensity to act out his desires with young girls and had a logical connection with the charged offense. They tended to show a general scheme or motive. While the admission of this evidence was prejudicial, it was extremely relevant and was appropriately admitted. The probative value exceeded the prejudicial effect and as such was admissible.' State v. Tarrell, supra, 74 Wis.2d at 658, 247 N.W.2d at 703.
"This language controls the present situation. The general scheme or motive here involved the defendant's actions toward a group of youngsters with the motive of obtaining future sexual gratification."
The Supreme Court of Wyoming has said:
"`Our analysis of cases from other jurisdictions leads to the conclusion that in recent years a preponderance of the courts have sustained the admissibility of the testimony of third persons as to prior or subsequent similar crimes, wrongs or acts in cases involving sexual offenses. Among the grounds relied upon for the admissibility of such evidence is that it is admissible to show motive or to show plan, with various phrases being used by the courts to describe these concepts.'"
Brown v. State, 736 P.2d 1110, 1112 (Wyo. 1987) (quoting from Elliott v. State, 600 P.2d 1044, 1047 (Wyo.1979)). The Supreme Court of Wyoming went on to say:
"Incest involves aberrant sexual behaviorit is a type of sexual deviancy that is difficult to understand. Therefore, a trier of fact might well wonder what would motivate the accused to behave in such bizarre manner. The evidence *1240 of prior sexual acts then was probative under the motive exception because of the unusual sexual behavior involved....
"If the accused had a predilection to deviant sexual practices with young female relatives, it would not be unreasonable for the trier of fact to determine that he had a motive to commit the acts complained of by the victim in this case."
736 P.2d at 1113.
All indications are that persons who engage in sexual misconduct, especially child abuse, have an abnormality that motivates them to commit these acts; therefore, proof of other sexual crimes would tend to show this motivation. As the majority correctly points out, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). The majority, however, then narrowly limits the type of evidence that can be used and does not explain why evidence of the motive of a sex offender is not admissible when evidence of motive is "always admissible." I believe that prior sexual misconduct is evidence of motive and should be admissible in a case charging a sex crime; Lee allows this kind of evidence, and I think that the majority is limiting Lee without justification.
Furthermore, I disagree with the majority's view that in the prosecution of sex crimes the law of Alabama should be the same as with other crimes. Wisconsin has allowed a "greater latitude of proof as to other like occurrences" in cases dealing with sex crimes. State v. Friedrich, 135 Wis.2d 1, 398 N.W.2d 763 (1987). The Supreme Court of Wisconsin stated in that case:
"To a person of normal, social and moral sensibility, the idea of the sexual exploitation of the young is so repulsive that it's almost impossible to believe that none but the most depraved and degenerate would commit such an act. The average juror could well find it incomprehensible that one who stands before the court on trial could commit such an act.
"Juries must have all the relevant facts before them. A past history of such a defendant's plans, schemes and motives is relevant."
135 Wis.2d at 27-28, 398 N.W.2d at 775.
The majority in Friedrich had to deal with a dissent that put forth the same arguments as the majority does in the present case; the dissent in Friedrich argued that the general exclusionary rule and its exceptions should be applied in the same way to all criminal cases regardless of the kind of crime involved. The majority defended Wisconsin's greater latitude of proof in sex crime cases by saying:
"The point of view espoused by the dissent equating the trial of a child sexual assault with that of forgery reflects a view of the law that is wrong and does not comport with section 904.04, Stats. [the general exclusionary rule]. Such a view does not reflect the reality of what is being faced by society in trying to cope with this problem. We must not and will not treat the sexual abuse of children as the dissent suggests when the dissent declares such offenses to be `a commonplace variety of criminal act....' [Citation omitted.] It is more than that. The consequences are too devastating and too lasting for such an approach to prevail."
135 Wis.2d at 34-35, 398 N.W.2d at 778.
I believe the majority's interpretations of Anonymous and Ex parte Cofer, 440 So.2d 1121 (Ala.1983), limit too severely the motive exception to the general exclusionary rule, and that the opinion is an unwarranted and unwise limitation of Lee. I concurred in Cofer, but only because the prior misconduct in that case occurred ten years before the offense in that case; thus, the prior act was inadmissible as being too remote. That was my sole reason for concurrence. In Anonymous, I concurred specially because the court below had been correct in holding that evidence of a pregnancy caused by the defendant was inadmissible under the authority of Lee. I did not agree with the discussion in Anonymous of exceptions to the general exclusionary rule.
*1241 In conclusion, let me say that I do not believe the law places, or should place, these deviant and unnatural sex crimes on the same level as all other crimes. Evidence of prior sexual misconduct is evidence of motive, and evidence of motive is an exception to the general exclusionary rule. We should stay with the modern trend.
For the above reasons, I agree that Watson should be affirmed, but I would reverse the Court of Criminal Appeals' ruling in Bowden, as it puts too great a limit on the admission of evidence of collateral sexual misconduct as evidence of motive. I strongly disagree with the view that the general exclusionary rule, and its exceptions, should be the same for sexual crimes as it is for all others.
STEAGALL, J., concurs.
NOTES
[1] Harrison v. State, 235 Ala. 1, 3, 178 So. 458, 460 (1937), cert. denied, 235 Ala. 292, 178 So. 460 (1938); Hall v. State, 378 So.2d 1193, 1194 (Ala.Crim.App.1979), cert. denied, 378 So.2d 1196 (Ala.1980); Davis v. State, 21 Ala.App. 595, 110 So. 599 (1926); Davis v. State, 20 Ala.App. 463, 103 So. 73 (1925); Mitchell v. State, 20 Ala.App. 165, 101 So. 168 (1924).
[2] While no issue is presented as to the correctness of the Court of Criminal Appeals' conclusion that evidence of the victim's pregnancy was admissible, we, nevertheless note that this holding is correct and the distinction made between this case and Anonymous on this point is a viable one.