MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted a proceeding against Larry Preston Williams on August 25, 1986.[1] Prior to the commencement of this proceeding, the committee had conducted investigations of respondent’s alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the proceedings which involved four specifications of misconduct, was sent to respondent by certified and regular mail dated February 6, 1986.[2] Respondent was also personally served with a subpoena duces tecum requiring him to appear at the proceedings and furnish the committee with his finan *1007 cial records relating to a sum he received in connection with the representation of a client named Percy Herbert.
The committee held a formal investigative hearing on these specifications on March 14 and April 28, 1986, as provided in article 15, section 3(b) of the articles of incorporation. Respondent was present on both days without counsel.
Based upon its investigation conducted at this hearing, the committee, by a unanimous vote, was of the opinion that respondent was guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law. Specifically, the committee found that respondent was guilty of the misconduct described in Specifications 2, 3 and 4.
On August 25, 1986, the committee filed a suit for disciplinary action against respondent in this court under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent did not file an answer to the petition.
The court, by order, then appointed Ms. Sheila C. Myers as commissioner to take evidence and file a report with this court setting forth her findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was held on April 7 and 28, 1987. Respondent was present and represented himself. The committee introduced in evidence the entire record of the earlier investigative hearing whereupon the committee rested its case subject to any cross-examination. Respondent, representing himself, called numerous witnesses, introduced documentary evidence, and testified on his own behalf.[3] Thereafter, the commissioner filed with this court her written report on August 20, 1987, wherein she stated her findings of fact and conclusions of law and recommended that the previous three-year suspension be further qualified with certain conditions to be complied with prior to his reinstatement. (At the time the commissioner made her recommendations, respondent had not been disbarred.) The committee concurred in part and opposed in part the commissioner’s findings and recommendation for discipline. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984). The following allegations of misconduct have been made against respondent. [4]
Specification No. 2 alleged:
That in your capacity as Attorney at Law, you were retained to represent the interest of one Percy Herbert in a criminal ease. That on or about October 20, 1983, you sent a letter to Mr. Herbert wherein you informed him that you would represent him in his efforts to obtain his release from the Feliciana Forensic Facility upon receipt of $1,000.00 as payment for medical expenses and $5,000.00 for attorney’s fees. You did further inform him that in the event the trial court did not grant his release, you would refund to him the sum of $2,500.00 *1008 upon [a] ruling adverse to him from the Louisiana Supreme Court. That either prior to or subsequent to your letter of October 30, 1983, you did enter into a hand written contract with Percy Herbert wherein you agreed to represent Mr. Herbert for the sum of $6,200.00 allotting no more than $1,200.00 for medical expert testimony fees. The balance of $5,000.00 was to be considered your attorney’s fees. That you further agreed that if you were unable to obtain Mr. Herbert’s release at the next scheduled hearing that you would refund to Mr. Herbert $2,500.00 within thirty (3) [sic] days after an unfavorable ruling by the Louisiana Supreme Court and reconsideration. That on or about October 27th of 1983, you did enroll as counsel of record in a case entitled State of Louisiana vs. Percy Herbert, case number 276135 on the docket of the Criminal District Court for Orleans Parish. That ultimately, the hearing concerning Mr. Herbert’s release from the Feliciana Forensic Facility was held on August the 21st of 1984. Mr. Herbert was ordered recommitted and was not released from the facility. That you made no refund of $2,500.00 to Mr. Herbert. That you have entered into a contingent fee arrangement for representing a defendant in a criminal case. That you have engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; conduct that is prejudicial to the administration of justice; and conduct that adversely reflects on your fitness to practice law; all in violation of Disciplinary Rules DR 2-106(C)[5] and DR 1-102(A)(4)(5)(6)[6) of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification No. 4 alleged:
That you did receive the sum of money from Percy Herbert or on his behalf in the amount of either $1,000.00 or $1,200.00 which was specifically to be used for medical expenses in the nature of expert witness’ fees. That at the hearing on August 21, 1984, you did not call any medical witnesses or expert witnesses. That having received the sum of between $1,000.00 and $1,200.00 for expert witnesses’ fees, and having failed, neglected, or refused to call and/or arrange for expert witnesses for said hearing, you have neglected a legal matter entrusted. That you have failed, neglected, and refused to refund to your client the $1,000.00 or $1,200.00 which was paid to you specifically for expert witness fees and have, therefore, converted said sum of money to your own use. That in doing so, you have engaged in illegal conduct involving moral turpitude, conduct involving dishonesty, deceit, fraud, or misrepresentation, conduct that is prejudicial to the administration of justice and conduct that adversely reflects on your fitness to practice law. That you have failed to maintain complete records of said funds and have failed to either return them to the client or hire the expert witnesses for which the funds were intended. The above all being in violation of Disciplinary Rules DR 9-102(B)(3)(4)[7],P] DR 7-101(A)(2)[8] DR 6-101(A)(8), *1009 [9] and DR 1-102(A)(3)[10] (4)(5)(6)[11] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Evidence submitted at the hearings established that Mr. Percy Herbert was indicted for second degree murder in March of 1980. On October 23, 1980, Mr. Herbert, represented by counsel other than respondent, was found not guilty by reason of insanity and was committed to the Felici-ana Forensic Facility in Jackson, Louisiana. In the fall of 1983, respondent, Larry Preston Williams, was hired by Mr. Percy Herbert to represent him in gaining his release from the Feliciana Forensic Facility. In a written agreement signed by both parties, respondent agreed to represent Mr. Herbert for the sum of $6,200, “allotting no more than $1,200 for Medical-EXPERT TESTIMONY FEES.” The $5,000 balance was to be considered attorney fees. The agreement further provided that in the event respondent did not obtain Mr. Herbert’s release at the next scheduled hearing, he would give Mr. Herbert a refund of $2,500 thirty days after an unfavorable ruling by this court.[12]
On October 27,1983, respondent’s motion to be recognized as counsel of record for Mr. Herbert was granted by the judge who had presided over Herbert’s trial in which he was found not guilty by reason of insanity and committed to a mental institution. Respondent represented Mr. Herbert in the sanity hearing on August 21, 1984. He did not hire any experts to testify on Mr. Herbert’s behalf. Mr. Herbert was ordered recommitted. On April 15, 1985, Mr. Herbert wrote a letter to the judge asking for another attorney. Nevertheless,' respondent represented Mr. Herbert at the sanity hearing on October 1, 1985. Again Mr. Herbert was recommitted.
On February 19, 1986, respondent filed an application for a writ of habeas corpus in the United States District Court for the Eastern District of Louisiana on behalf of Percy Herbert. The application was subsequently dismissed for failure to exhaust state remedies. Despite the fact that Mr. Herbert was not released from the Felicia-na Forensic Facility and no experts were ever hired, respondent has not refunded the contingent fee of $2,500 or the $1,200 for medical expenses.

Specification 2

The commissioner found that respondent did not violate DR 2-106(C) (prohibition against charging a contingent fee in a criminal case) because the committee failed to carry its burden of proving that respondent represented Mr. Herbert in a “criminal case.” We disagree. Respondent filed a motion to become counsel of record in a case on the criminal docket. He represented Mr. Herbert in two hearings provided for by Louisiana Code of Criminal Procedure article 655. The hearings were held in criminal district court and had to be heard before the judge who originally committed Mr. Herbert after he was found not guilty by reason of insanity.[13] The fact that respondent subsequently filed an application for a writ of habeas corpus in the federal court does not change the fact that he originally entered into an arrangement for a contingent fee for representing Mr. *1010 Herbert in a criminal sanity hearing. See Louisiana State Bar Association v. Nader, 472 So.2d 11 (La.1985). The fee arrangement was clearly contingent in nature and therefore we find that respondent violated DR 2-106(C).
The commissioner found that respondent did not violate DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The committee disagreed. Even though respondent failed to obtain Percy Herbert’s release at the next scheduled hearing, he did not refund the $2,500 as promised in the agreement. It is a misrepresentation for an attorney to promise to refund $2,500 thirty days after an unfavorable ruling by this court and then never apply for writs with this court. At the very least, respondent should have returned the $2,500 when he was suspended from practice in the state courts of Louisiana and was informed that the application for a writ of habeas corpus filed in federal court had been dismissed. Therefore, we find that respondent violated DR 1-102(A)(4) as well as DR 1-102(A)(5) (conduct that is prejudicial to the administration of justice) and DR 1-102(A)(6) (conduct that adversely reflects on his fitness to practice law).[14]

Specification ⅛

Respondent never hired any medical experts on behalf of Mr. Herbert and yet he did not return the $1,200. At the commissioner’s hearing, respondent testified that he put the funds he received for the medical experts in his operating account. When asked what had happened to the funds, he admitted, “You spend money in the course of practice.” When respondent failed to hire any medical experts, he should have immediately returned the $1,200. The commissioner found that respondent violated DR 9-102(B)(3) (failing to maintain complete records of client’s funds in his possession), DR 1-102(A)(6) (failing to promptly pay or deliver as requested by a client the funds which the client is entitled to receive), DR 1-102(A)(5) (conduct that is prejudicial to the administration of justice) and DR 1-102(A)(6) (conduct that adversely reflects on his fitness to practice law). The committee concurred. We agree.
The commissioner found that respondent did not violate DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The committee opposes this conclusion. It was dishonest for respondent to take money that was supposed to be used for medical expert fees and never hire any experts nor return the money. Respondent admitted that he never hired any experts and that he put the money in his operating account. He also admitted that he spent the money in “the course of practice.” This was clearly dishonest. Therefore, we find that respondent did violate DR 1-102(A)(4).[15]
Having found respondent guilty of two specifications of misconduct, we consider that disciplinary action is warranted. Respondent has been found guilty of entering into an arrangement for a contingent fee in a criminal case, failing to maintain complete records of the funds of a client, failing to promptly deliver to the client funds in his possession which the client was entitled to receive, engaging in conduct involving dishonesty or misrepresentation, engaging in conduct that is prejudicial to the administration of justice, and engaging in conduct that adversely reflects on his fitness to practice law.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and *1011 the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. ABA Standards for Imposing Lawyer Sanctions § 9.1 (1986) [hereinafter cited as Standards].
We find the following aggravating factors listed in Standards § 9.22 are present in respondent’s case: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; and (j) indifference to making restitution.[16]
The only two mitigating factors that are present are: (g) character or reputation[17] and (k) imposition of other penalties or sanctions. None of the other mitigating factors are present in this case.[18]
Even though there are many aggravating factors in this case, we will not disbar respondent again or extend the mandatory delay of his readmission application, except for failure to make restitution as hereinafter provided, because the violations in this case occurred at the same time as the breaches which led to respondent’s previous disbarment and form a part of the same pattern of misconduct. Nevertheless, respondent is adjudged guilty of additional violations that will stand on his record for consideration in determining whether he should be readmitted to the practice of law. We conclude that respondent is required to refund the $2,500 for attorney fees and the $1,200 for medical expert fees to Mr. Herbert. Payment should be made and proof of said payment furnished to the committee on or before sixty days from the date this judgment becomes final. Upon failing to furnish proof of this payment within said time limit, the mandatory delay for his readmission shall be extended six months. In any event, restitution must be made before respondent is considered for readmission.
DECREE
For the reasons assigned, it is ordered that respondent’s violations of the disciplinary rules shall stand on his record for consideration in determining whether he should be readmitted to the practice of law. Respondent is further ordered to pay $3,700 to Mr. Percy Herbert and to furnish proof of said payment to the committee on or before sixty days from the date this judgment becomes final. Upon failing to furnish proof of this payment within said time limit, the mandatory delay for respondent’s readmission shall be extended six months. Respondent must make restitution before he is considered for readmission. Respondent is to bear all costs of these proceedings.

. Mr. Williams was suspended for a period of three years on March 20, 1986. Louisiana State Bar Association v. Williams, 479 So.2d 329 (La. 1986). Thereafter, on September 9, 1987, Mr. Williams was disbarred with his previous suspension to run concurrently with his disbarment. Louisiana State Bar Association v. Williams, 512 So.2d 404 (La. 1987). This court has jurisdiction over a disciplinary proceeding brought against a disbarred attorney. "[B]ecause of the propensity of disbarred lawyers to seek readmission, this court will permit the bar association to prove up additional grounds for his discipline or disbarment in order to make a record to assist in evaluating that person’s moral character in the event he applies for readmission.” Louisiana State Bar Association v. Krasnoff, 515 So.2d 780 (La.1987).

. The certified letters sent to respondent’s office and home addresses were returned as unclaimed.

. At the commissioner’s hearing, respondent alleged racial discrimination in the selection of the committee, the appointment of commissioners, and the discipline of black attorneys. Respondent was allowed to call eight of the nine members of the committee, the executive counsel and assistant counsel of the bar association amassing more than 485 pages of testimony. The record contains no evidence whatsoever of discrimination.

. In Specification 1, respondent was charged with failing and neglecting to perform work that a client, Mike Adeleke, paid him $300 to perform in violation of Disciplinary Rules 7-101(A)(2), 6-101(A)(3), 2-110(A)(3), 1-102(A)(5) and (6). No evidence was presented as to this specification at the investigative hearing and therefore it was abandoned by the committee.
Specification 3, involving alleged violations of Disciplinary Rules 7-101(A)(3), 6-101(A)(3) and 1-102(A)(5), is not before us because the committee concurred in the commissioner’s findings that it had not been proved.

. DR 2-106(C) provides:
A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

. DR 1-102 provides in relevant part:
(A) A lawyer shall not:
[[Image here]]
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. DR 9-102 provides in relevant part:
(B) A lawyer shall:
[[Image here]]
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

.DR 7-101(A)(2) provides:
A lawyer shall not intentionally:
Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

. DR 6-101(A)(3) provides:
A lawyer shall not: Neglect a legal matter entrusted to him.

. DR 1-102(A)(3) provides:
A lawyer shall not: (3) Engage in illegal conduct involving moral turpitude.

. Supra note 6.

. In a typewritten letter dated October 20, 1983, respondent stated that he would represent Mr. Herbert upon receipt of $1,000 for medical expenses and 55,000 for attorney fees (with the same agreement for the $2,500 refund). At one point in the hearings, respondent stated that he received $500 not $1,000 or $1,200 for medical expenses. He could not produce any records or checks to prove that he only received $500 and therefore we find that Mr. Herbert gave respondent $1,200 for medical expenses since that is the amount stated in the written agreement that was signed by both parties.

.Article 655 has recently been amended to provide that the hearing is to be held before a review panel which shall make a recommendation to the court by which the person was committed.

. The commissioner had found that respondent violated DR 1-102(A)(5) and (6). The committee concurred.

. The alleged violations of Disciplinary Rules 6 — 101(A)(3), 7 — 101 (A)(2) and 1-102(A)(3) are not before us because the committee concurred in the commissioner's findings that they had not been proved.

. The only aggravating factors not present are:
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency and (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process.

. Several judges testified that respondent was personable and hard-working.

. The mitigating factors not present in this case are: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (/) remorse; and (m) remoteness of prior offenses. Standards § 9.23.