KELLUM, Judge.
 

 The appellant, Luvertte Williams, was convicted of one count of first-degree rape, a violation of § 13A-6-61, Ala.Code 1975. Williams was sentenced to 30 years’ im
 
 *732
 
 prisonment and was ordered to pay $50 to the Crime Victims Compensation Fund.
 

 The evidence presented at trial established the following. During November 2004, Williams lived in the same apartment as the victim, W.M.,
 
 [1]
 
 the victim’s mother, the victim’s sister, J.W., the victim’s niece and a friend of the victim’s mother. Testimony presented at trial established that Williams had fathered a child by J.W. and was living in the apartment to assist J.W. with their child. W.M., who was born on August 1, 1994, testified that sometime in November 2004, Williams chased her from the living room of the apartment into W.M.’s mother’s bathroom, took off W.M.’s pants and underwear, and engaged in sexual intercourse with her. W.M. testified that Williams engaged in sexual intercourse with her on at least one other occasion — in December 2005. W.M.’s mother learned of these events in January 2006, at which time she took W.M. to the hospital for a physical examination. The exam indicated evidence of sexual abuse. On August 25, 2006, Williams was indicted for first-degree rape.
 
 [2]
 
 On April 10, 2008, the jury convicted Williams of first-degree rape. This appeal followed.
 

 Williams argues that the trial court erred when it denied his motion in limine and allowed the State to present evidence regarding his sexual relations with the victim’s sister. Specifically, Williams argues that the trial court committed reversible error when it allowed the State to introduce at trial evidence that Williams had fathered a child by the victim’s sister.
 

 The State initially argues that Williams did not properly preserve this issue for appellate review. The State claims that after the trial court denied Williams’s motion in limine, Williams did not object to the introduction of the evidence that Williams had fathered a child by J.W. when the testimony was first presented at trial. Thus, the State contends, he did not properly preserve his claim for appellate review. Nor, the State argues, did Williams obtain a continuing objection from the trial court that would have properly preserved his objection to the denial of his motion in limine.
 

 “ ‘In
 
 Bush v. Alabama Farm Bureau Mutual Casualty Insurance Company, Inc.,
 
 576 So.2d 175 (Ala.1991), the Alabama Supreme Court stated the general rule regarding motions in limine:
 

 “ ‘ “We recognize that the trial court has broad discretion in evidentiary matters. The general rule was stated in
 
 State v. Askew,
 
 455 So.2d 36 (Ala.Civ.App.1984), citing C. Gamble,
 
 The Motion in Limine: A Pretrial Procedure That Has Come of Age,
 
 33 Ala. L.Rev. 1 (1981), as follows:
 

 “ ‘ “ ‘In keeping with the vesting of broad discretion in the trial court in this area,
 
 it is generally held that the granting of a motion in limine can never be reversible error.
 
 The non-moving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter.
 
 This offer of proof is required in
 
 
 *733
 

 order to isolate the error for appeal. It is this refusal at trial to accept that proffered evidence, not the granting of the pretrial motion in limine, that serves as the basis for reversible error.
 
 Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion
 
 in limine.’
 
 ” ’ ”
 

 Harrington v. State,
 
 858 So.2d 278, 291-92 (Ala.Crim.App.2002), quoting
 
 Bowles v. State,
 
 784 So.2d 1077, 1079 (Ala.Crim.App.2000), quoting in turn other cases. In
 
 Perry v. Brakefield,
 
 584 So.2d 602 (Ala.1988), the Alabama Supreme Court further explained the preservation of a ruling on a motion in limine:
 

 “In
 
 Robinson v. Kierce,
 
 518 So.2d 1005, 1009 (Ala.1987), we held as follows:
 

 “ ‘ “We hold, therefore, that an appellant who suffers an adverse ruling on a motion to exclude evidence (or other matters, e.g., argument of counsel), made in limine, preserves this adverse ruling for post-judgment and appellate review
 
 only if he objects to the introduction of the proffered evidence or other matters and assigns specific grounds [therefor] at the time of trial, unless he has obtained express acquiescence of the trial judge that such subsequent objection to evidence proffered at trial and assignment of grounds [therefor] are not necessary.
 
 See, C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala. L.Rev. 1 (1981).” ’ (Quoting
 
 Liberty National Life Insurance Co. v. Beasley,
 
 466 So.2d 935 (Ala.1985).)
 

 “This Court further held in
 
 Killingsworth v. Killingsworth,
 
 283 Ala. 345, 354, 217 So.2d 57, 65-66 (1968), as follows:
 

 “‘“[A]n offer of proof is not necessary, in order to preserve an objection to a ruling of exclusion for review, where the offer of proof would be a useless gesture by virtue of the attitude of the trial court, or where the court has ruled broadly that evidence of a particular class or type, or evidence in support of the theory or fact which the party is seeking to establish, is inadmissible.” ’ (Quoting 4 C.J.S.
 
 Appeal and Error,
 
 § 291.)
 

 “The clear holding of these cases is that unless the trial court’s ruling on the motion
 
 in limine
 
 is
 
 absolute or unconditional,
 
 the ruling does not preserve the issue for appeal.”
 

 534 So.2d at 606 (final emphasis supplied).
 

 Before trial, Williams filed a motion in limine asking the trial court to bar the State from introducing evidence of Williams’s sexual relations with J.W., including evidence that Williams had fathered a child by J.W. The trial court denied this motion without explanation. However, during the State’s opening argument, the following occurred:
 

 “[PROSECUTOR]: I expect the evidence to show you that it is an indisputable fact that when this man, who is 21 years old now, but that when he was 17, he fathered a child—
 

 “[DEFENSE COUNSEL]: Objection, Your Honor. Bringing my client’s character to prove bad acts.”
 

 (R. 53.) At this point, the jury was excused, and the following discussion took place among the trial court, defense counsel, and the prosecutor:
 

 “[DEFENSE COUNSEL]: Your Hon- or, I’m objecting strongly. As a matter of fact, I’m going to move for a mistrial simply because that information came out. That information is so damaging
 
 *734
 
 there is no way this man is going to get a fair trial with that information.
 

 “THE COURT: Has there been a hearing on this already?
 

 “[PROSECUTOR]: Yes, sir.
 

 “[DEFENSE COUNSEL]: Yes, sir, it has Your Honor. But again I’m objecting strongly. This is character evidence. My client’s character is not in issue in this case. He’s not taken the stand. He’s not taken the stand to testify. This is a violation of 403, 404(a) of the Alabama Rules of Evidence.
 

 “THE COURT: Anything further?
 

 “[DEFENSE COUNSEL]: No, sir.
 

 “[PROSECUTOR]: No, sir.
 

 “THE COURT: This evidence in a pretrial motion has previously been determined that it would be allowed in this case?
 

 “[PROSECUTOR]: Yes, sir.
 

 “[DEFENSE COUNSEL]: You Honor, if I recall — if we check the records, I don’t know if there was a definite ruling at that time as to whether or not that information should be entered into evidence.
 

 “[PROSECUTOR]: Yes, sir, you denied his motion.
 

 [[Image here]]
 

 “THE COURT: [Defense counsel], this has been predetermined that it would be admissible if the State offered it, do you agree or disagree?
 

 “[DEFENSE COUNSEL]: I disagree, Your Honor. I think we need to verify that.
 

 “[PROSECUTOR]: Where is the — the Court file is right there in front of you. “THE COURT: 4-30-07 motion in li-mine, motion denied?
 

 “[PROSECUTOR]: Yes, sir.
 

 “[DEFENSE COUNSEL]: Judge, I’m going to renew the motion. I have to. I’m going to. No way this man is going to get a fair trial if this evidence comes in as early as the closing statement [sic] on the grounds of relevancy.
 

 [[Image here]]
 

 [DEFENSE COUNSEL]: It is irrelevant. We are talking about the sister— we are not even talking about the victim in this case. We are talking about the sister of the victim. It has no relevancy whatsoever with what he’s charged with today.
 

 “THE COURT: All right. Anything further?
 

 “[DEFENSE COUNSEL]: No, sir.
 

 “THE COURT: All right.
 
 I ovemiled your objection or I intend to. I will do it again to make sure it’s in the record. You preserved, your record.”
 

 (R. 53-56) (emphasis supplied).
 

 Immediately thereafter, in the presence of the jury and after the trial judge ordered the State to resume its opening remarks, trial counsel for Williams objected to the introduction of the evidence that Williams had fathered a child by the victim’s sister once again:
 

 “[PROSECUTOR]: Yes, sir. When this young man was 17 he fathered a child with a 12-year-old girl named [J.W.] She also goes by the name .... She is the biological sister—
 

 “[DEFENSE COUNSEL]: Objection. Your honor, again, I want to object, continuously object. That information is introduced or tried to be introduced in court as evidence.
 

 “THE COURT: [Defense counsel],
 
 we have gone over the fact that that has been covered in a pretrial motion. And it’s been ruled on by the Comt. And it’s properly preserved through the motion in limine and by your objection. You have the right to object as many times
 
 
 *735
 

 as you want to. But, overruled again.
 
 Continue.”
 

 (R. 56-57 (emphasis supplied).)
 

 During the State’s case-in-chief, defense counsel did not object again to the mention of Williams’s fathering a child by the victim’s sister during testimony by the victim, the victim’s sister, or the victim’s mother. However, defense counsel did object to the mention of the pregnancy by Debbi Land, a counselor who interviewed the victim after the rapes, when she stated that the sister’s pregnancy was one fact she considered in reaching the conclusion that W.M. had been raped. The trial court sustained the objection — on relevancy grounds — and ordered the jury to disregard Land’s statement.
 

 Even though defense counsel did not object to the introduction to the evidence that J.W. had become pregnant as a result of sexual intercourse with Williams when the evidence was first introduced at trial, the record clearly establishes that the trial court’s decision regarding the admissibility of the evidence regarding J.W.’s pregnancy by Williams was “absolute” and “unconditional,” thus precluding the need by defense counsel to renew his objection in order to properly preserve this issue for appellate review. Further, the trial court twice told defense counsel that his objection regarding this evidence was overruled and that counsel’s objection was properly preserved “for the record.” See
 
 Ex parte Parks,
 
 923 So.2d 330, 333 (Ala.2005) (“The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.”). Given these circumstances, the issue of the admissibility of evidence that Williams had fathered a child by the victim’s sister was properly preserved for our review. Therefore, we will proceed to the merits of Williams’s claim.
 

 Williams contends that evidence demonstrating that he fathered a child by the victim’s sister, who was 12 years old at the time she became pregnant by Williams, was improper character evidence of prior bad acts and was inadmissible under Rule 404(a), Ala. R. Evid. Furthermore, Williams argues that the evidence is not admissible under Rule 404(b), Ala. R. Evid., as an exception to the general ban of character evidence in Rule 404(a).
 

 “ ‘ “The admission or exclusion of evidence is a matter within the sound discretion of the trial court.”
 
 Taylor v. State,
 
 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.”
 
 Ex parte Loggins,
 
 771 So.2d 1093, 1103 (Ala.2000).’ ”
 

 Harris v. State,
 
 2 So.3d 880, 927 (Ala.Crim.App.2007), quoting
 
 Gavin v. State,
 
 891 So.2d 907, 963 (Ala.Crim.App.2003).
 

 Evidence that Williams fathered the victim’s sister’s child was presented several different times at trial. The victim testified to the following:
 

 “[PROSECUTOR]: Okay. And now, did anybody else live in that apartment with you ever?
 

 “[VICTIM]: [Luvertte] Williams.
 

 “[PROSECUTOR]: [Luvertte] moved in when?
 

 “[VICTIM]: After they had the baby.”
 

 (R. 90-91.)
 

 The victim’s sister, J.W., also testified:
 

 “[PROSECUTOR]: And how do you know the defendant [Luvertte] Williams?
 

 
 *736
 
 “[J.W.]: He’s the father of my daughter.
 

 [[Image here]]
 

 “[PROSECUTOR]: What kind of relationship did you have with [Luvertte Williams]?
 

 “[J.W.]: We were together for about three months.
 

 “[PROSECUTOR]: You went together?
 

 “[J.W.]: Yes, ma’am.
 

 “[PROSECUTOR]: What does that mean?
 

 “[J.W.]: We had sexual contact for about three months.
 

 “[PROSECUTOR]: How old were you when that began?
 

 “[J.W.]: I was twelve.
 

 “[PROSECUTOR]: Do you remember how many times you all had sex?
 

 “[J.W.]: Three.
 

 “[PROSECUTOR]: Okay. And when did you get pregnant?
 

 “[J.W.]: I got pregnant in February.
 

 [[Image here]]
 

 “[PROSECUTOR]: When was your daughter born?
 

 “[J.W.]: ‘04.
 

 “[PROSECUTOR]: What is her birthday?
 

 “[J.W.]: November 29, 2004.”
 

 (R. 137-40.)
 

 Finally, the victim’s mother testified about the relationship between Williams and J.W.:
 

 “[PROSECUTOR]: While you were living there at Flint Hill, did you learn that one of your daughters there was sexually active?
 

 “[WITNESS]: Yes, ma’am.
 

 [[Image here]]
 

 “[PROSECUTOR]: Which daughter?
 

 “[WITNESS]: [J.W.]
 

 “[PROSECUTOR]: And did you know at the time who she had been sexually active with?
 

 “[WITNESS]: No, not really.
 

 “[PROSECUTOR]: And at some point did you learn who she was sexually active with?
 

 “[WITNESS]: Yes, ma’am.
 

 “[PROSECUTOR]: And who was that? Who was she having sex with?
 

 “[WITNESS]: What I learned?
 

 “[PROSECUTOR]: Yes?
 

 “[WITNESS]: [Luvertte] Williams.
 

 [[Image here]]
 

 “[PROSECUTOR]: And when your daughter [J.W.], when you found out she had been sexually active with [Luvertte Williams], how old was she?
 

 “[WITNESS]: Twelve.”
 

 (R. 153-55.) Later in her testimony, the mother explained that she allowed Williams to move into the apartment with her family so that he could help take care of J.W.’s baby. When asked if Williams lived with her, W.M., J.W., and J.W.’s child after they moved into a new residence, she replied that he did not move with them but that he would come by the house to “see his baby.” (R. 172.)
 

 In a rape case, evidence showing the defendant impregnated the sister of the victim is inadmissible in Alabama. In the seminal case of
 
 Lee v. State,
 
 246 Ala. 69, 18 So.2d 706 (1944), the Alabama Supreme Court considered facts similar to the ones at hand in which testimony regarding the pregnancy of the victim’s sister was admitted over the defendant’s objection at trial. The Court explained:
 

 “The State should not have been allowed to prove the fact of Ruby’s pregnancy or the procuring of her abortion. The fact of Ruby’s pregnancy, through the agency of her father, does tend to shed light on the main inquiry, but un
 
 *737
 
 like the fact of the sexual intercourse with her father, it also tends to unduly multiply the issues and to divert the minds of the jury from the main issue.”
 

 246 Ala. at 72, 18 So.2d at 708. Since
 
 Lee
 
 was decided, both this Court and the Alabama Supreme Court have consistently ruled that this type of evidence is inadmissible character evidence that does not fit into any of the exceptions in Rule 404(b), Ala. R. Evid.
 
 See, e.g., Bowden v. State,
 
 538 So.2d 1226, 1238 (Ala.1988) (“We also agree, however, that evidence of the sister’s pregnancy and subsequent stillbirth would ‘tend to unduly multiply the issues and to divert the minds of the jury from the main issue.’ ”);
 
 Watson v. State,
 
 538 So.2d 1216, 1222 (Ala.Crim.App.1987) (“Although the evidence of the sexual abuse of prosecutrix’s sister was admissible, the fact of her pregnancy was inadmissible, according to the holding of Lee.... ”);
 
 Grizzell v. State,
 
 507 So.2d 969, 971 (Ala.Crim.App.1986) (“Similarly, the fact that the sister was permitted to testify over objection that she became pregnant and had a child by her father was also reversible error.”);
 
 see also Sellers v. State,
 
 41 Ala.App. 612, 615, 145 So.2d 853, 856 (1962) (“[Evidence that the father had engaged in sexual relations with his minor daughter] was permissible to establish a pattern of promiscuous sexual behavior with children, ... but the pregnancy resulting from that behavior multiplied the issues and tended to divert the minds of the jury from the main issue.”).
 

 The State argues that this evidence was admissible because, it argues, the evidence was intertwined with the facts of this case and “was necessary to explain why Williams was living in the home with the victim.” (State’s brief, at 15-16.) We question the relevance of establishing why Williams was living in the same home as the victim. Likewise, Williams’s identity was not at issue; thus, the Supreme Court’s decision in
 
 Bowden,
 
 supra, would bar admission of any testimony concerning Williams’s collateral acts with J.W. under the identity exception to Rule 404(b). Further, it does not appear that evidence of Williams’s relationship with J.W. was admissible to establish his motive for raping W.M.,
 
 see, e.g., Garner v. State,
 
 977 So.2d 533, 537 (Ala.Crim.App.2007) (holding that testimony regarding defendant’s prior sexual abuse was relevant to show his “unnatural sexual desire for young girls”), since Williams’s relationship with J.W. appears to have been more of a dating relationship — albeit with an underaged girl — rather than one predicated upon his unnatural desire for young girls.
 
 [3]
 
 In any event, even if evidence of Williams’s sexual relationship with J.W. were admissible under one of the Rule 404(b) exceptions, the Supreme Court’s decisions in both
 
 Lee
 
 and
 
 Bowden,
 
 supra, make it perfectly clear that the admission of evidence concerning J.W.’s pregnancy by Williams would nonetheless constitute reversible error. As this Court noted in
 
 Grizzell v. State:
 

 “This evidence as to the pregnancies of the two sisters was simply evidence of prior bad acts of a criminal defendant which is presumptively prejudicial.
 
 Cofer [
 
 v.
 
 State,
 
 440 So.2d 1121 (Ala.1983) ]. It interjects a collateral issue into the case which would divert the minds of the jury from the main issue. The admission of such evidence was clearly erroneous under the authorities herein cited.
 

 “The admission of such evidence was obviously ‘prosecution overkill.’ ”
 

 507 So.2d at 971.
 

 This Court is bound by decisions of the Alabama Supreme Court, see § 12-3-16,
 
 *738
 
 Ala.Code 1975, and “is without authority to overrule the decisions of [that] court.”
 
 Jones v. City of Huntsville,
 
 288 Ala. 242, 244, 259 So.2d 288, 290 (1972). However reprehensible Williams’s actions were, this Court has no choice but to adhere to the precedent established by our Supreme Court. Based on the foregoing, the judgment of the circuit court is reversed, and this cause is remanded for a new trial.
 

 REVERSED AND REMANDED.
 

 WELCH, WINDOM, and MAIN, JJ., concur. WISE, P.J., concurs in the result.
 

 [1]
 

 . Initials are used throughout the decision to protect the anonymity of the victim, W.M., and her sister, J.W., who are both minors. See Rule 52, Ala. R.App. P. We note that J.W. is not related to the appellant and her surname — while beginning with the same letter as the appellant's — differs from that of the appellant.
 

 [2]
 

 . The indictment identified Williams as "Lu-vertte Williams,” alias "Antoine Luvertte Williams.” Williams is referred to as both "Antoine” and "Luvertte” at various places in the record. For purposes of clarity, we will refer to him in this opinion as "Williams” or "Luvertte Williams.”
 

 [3]
 

 . As best we are able to determine from the record, Williams’s relationship with J.W. began when he was 16 or 17 years old.