COBB, Chief Justice.
 

 On April 10, 2008, Luvertte Williams
 
 [1]
 
 was convicted of rape in the first degree, a violation of § 13A-6-61, Ala.Code 1975. He was sentenced to 30 years’ imprisonment and was ordered to pay $50 to the Crime Victims Compensation Fund. Williams appealed his conviction and sentence to the Court of Criminal Appeals, which reversed his conviction.
 
 See Williams v. State,
 
 73 So.3d 731 (Ala.Crim.App.2009). The State petitioned for the writ of certiorari, and we granted the State’s petition on June 17, 2010. We now reverse the decision of the Court of Criminal Appeals and remand the case.
 

 Facts
 

 The evidence presented at trial established the following. The victim’s sister, J.W., was born in June 1991. From approximately December 2003 to February 2004, when she was 12, J.W. engaged in a sexual relationship with Williams, who was 17 at the time. In February 2004, she conceived a child by Williams, and the baby was born in November 2004. Williams admitted to being the baby’s father, and, at some point after he became aware that J.W. was pregnant, he moved into the house with J.W. to assist J.W. with the baby. Also living in the house at that time were J.W.’s then 10-year-old sister, W.M., and the mother of J.W. and W.M.
 
 [2]
 

 W.M. testified that, before the baby was born, W.M. was asleep on a mattress in the living room when Williams entered the living room, sat on top of her, and attempted to remove her clothes, waking W.M. up in the process. W.M. testified that she screamed and that Williams ran into the nearby bathroom.
 

 W.M. further testified that, one night after the baby was born, she was again sleeping in the living room. Williams “came in,” and W.M. ran into the bathroom and locked the door. As W.M. braced herself against the door, she could hear Williams picking the lock with “some kind of screwdriver.” Williams was able to pick the lock, and he forced his way into the bathroom, causing W.M. to fall to the floor. They struggled, and Williams removed W.M.’s clothes and raped her, then left the bathroom. As he left, he pointed his forefinger at her and cocked his thumb in a way that reminded W.M. of a gun. For some time afterward, W.M. was too afraid of Williams to tell anyone what had happened.
 

 W.M. testified that, in all, Williams raped her “about three times” in her life, the last time on Christmas Eve 2005, when
 
 *740
 
 she was 11 years old. In January 2006, W.M.’s mother learned that Williams had raped W.M., and she took W.M. to the hospital for a physical examination.
 

 The physician who examined W.M., Dr. David W. Bernard, testified at Williams’s trial. Dr. Bernard is an associate professor at the medical school at the University of Alabama at Birmingham (“UAB”). In his medical practice, Dr. Bernard spends about 75 percent of his time working in the UAB emergency room and 25 percent of his time working in a child-abuse clinic known as the CHIPS clinic. Dr. Bernard has training and experience in pediatric emergency medicine and pediatric child-abuse diagnosis and treatment, including examinations to determine whether a child has been sexually abused.
 

 During the course of Dr. Bernard’s January 2006 examination of W.M., Dr. Bernard noted evidence of prior blunt-force injuiy to the tissues of W.M.’s vagina and the absence of hymenal tissue in an area Dr. Bernard described as “an area where all girls should have hymenal tissue.” In addition, W.M. had symptoms of a sexually transmitted disease, which laboratory tests subsequently confirmed was chlamydia. Dr. Bernard testified that chlamydia could not have been transmitted to W.M. by simply living in the same house with a person who had the disease. According to Dr. Bernard, the only way for chlamydia to be transferred to the genitals of a child would be through direct contact with another person’s bodily secretions that contained the chlamydia organism. Based on his observations, Dr. Bernard concluded that W.M. had been the victim of sexual abuse.
 

 Before the trial in this case, while Williams was in jail, the parties consented to a court order requiring Williams to submit to a chlamydia test to be administered by the doctor at the jail. Williams submitted to the test, and the results were positive for chlamydia. At trial, during the cross-examination of the jail nurse-technician, Williams’s counsel sought to discredit the results of the chlamydia test by pointing out that the laboratory records reflected an incorrect date of birth for Williams and by questioning whether the test sample could have belonged to another person named Luvertte Williams. Under cross-examination, the nurse-technician admitted that “it could be a possibility” that more than one inmate in the jail while Williams was there was named Luvertte Williams.
 

 At trial, J.W. testified that she was tested for chlamydia after she learned that W.M. had tested positive for the disease. J.W.’s test results were also positive for chlamydia.
 

 Counsel for the State asked Dr. Bernard the following question during his testimony at trial:
 

 “If you were — would you find it significant that [WM.], who has chlamydia, that her sister [J.W.] also has chlamydia, and that ... Williams .. also has chlamydia. Would you find that to be significant with them living all in the same house?”
 

 Dr. Bernard responded:
 

 “Chlamydia is a very rare disease in children. And we know that [it] is only passed by sexual contact in that age child. So to have two children in the same house with it, and to have an older person with chlamydia in the same home, you wonder about the fact that chlamydia could have been transmitted within the home via sexual contact.”
 

 Williams did not contend during his trial that W.M. had not been raped. Rather, he presented the defense that the State had not proven that he was the person who had raped W.M.
 

 
 *741
 

 Procedural History
 

 On August 25, 2006, Williams was indicted on two counts of first-degree rape. Before trial, Williams filed a motion in limine requesting an order prohibiting the State from entering into evidence certain prior wrongful acts of Williams, specifically that he had had a sexual relationship with J.W. when she was 12 and had fathered a child by her and that he had been placed in a psychiatric facility for 2 years for molesting his 7-year-old cousin when he was 15 years of age. The State stipulated that it would not introduce evidence as to the time Williams spent in the psychiatric facility for molesting his seven-year-old cousin. The trial court then overruled the motion as to Williams’s sexual relationship with J.W. and as to the fact that he had fathered a child with her.
 

 At trial, Williams again moved for an order prohibiting the State from introducing evidence of Williams’s sexual relationship with J.W., including evidence indicating that Williams had fathered a child by J.W. The trial court again denied the motion.
 

 On April 10, 2008, the jury convicted Williams of first-degree rape. Williams appealed. On appeal, Williams argued that the trial court committed reversible error when it allowed the State to introduce at trial evidence showing that Williams had fathered a child by the victim’s sister. The Court of Criminal Appeals held that, under
 
 Lee v. State,
 
 246 Ala. 69, 18 So.2d 706 (1944), “evidence showing the defendant impregnated the sister of the victim is inadmissible in Alabama.” 73 So.3d at 736. The Court of Criminal Appeals concluded that evidence of Williams’s sexual relationship with J.W. and the fact that he had fathered a child with her fit none of the exceptions found in Rule 404(b), Ala. R. Evid., regarding the introduction of a defendant’s prior “crimes, wrongs, or acts.” Accordingly, the Court of Criminal Appeals reversed Williams’s conviction and his sentence.
 

 Standard of Review
 

 “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing” that the trial court exceeded its discretion.
 
 Ex parte Loggins,
 
 771 So.2d 1093, 1103 (Ala.2000).
 

 Analysis
 

 I. The Holding of
 
 Lee v. State
 

 In reversing Williams’s conviction and sentence, the Court of Criminal Appeals relied heavily on
 
 Lee v. State,
 
 246 Ala. 69, 18 So.2d 706 (1944). In that 1944 case, Virgil Lee was indicted, tried, and convicted of the charge that he “‘did carnally know, or abuse in the attempt to carnally know [his daughter] Elese Lee, a girl under the age of twelve years,’ ” in violation of Title 14, § 398, Ala.Code 1940. 246 Ala. at 71, 18 So.2d at 707. The prosecution introduced testimony evidence indicating that Lee had previously made sexual advances on two of his other daughters, Mary Ruth and Jewel, and that he had placed his hands on their breasts and genitals.
 
 Id.
 
 In addition, the prosecution presented evidence indicating that Virgil Lee had raped Ruby, another of his daughters, who testified that she had become pregnant by her father. 246 Ala. at 71-72, 18 So.2d at 707-08. Ruby also testified that she had been married and that her father first raped her shortly after she had left her husband and returned home. 246 Ala. at 72, 18 So.2d at 708. This Court noted that Ruby’s testimony was “not at all clear or satisfactory as to whether she became pregnant at a time which necessarily would exclude the possibility” that she con
 
 *742
 
 ceived the child by her husband, not her father. 246 Ala. at 72, 18 So.2d at 708.
 

 With little discussion, the Court held that the trial court properly admitted testimony of Virgil Lee’s sexual abuse of Mary Ruth, Jewel, and Ruby. 246 Ala. at 71, 18 So.2d at 707. However, the Court went on to consider whether the trial court properly admitted evidence of the fact of Ruby’s pregnancy. 246 Ala. at 71-72, 18 So.2d at 707-08. In analyzing the admissibility of evidence pertaining to Ruby’s pregnancy, the Court stated the following general rule:
 

 “ ‘In inquiries of fact, dependent on circumstantial evidence for their solution,
 
 no certain mle can be laid down,
 
 which will define, with unerring accuracy, what collateral facts and circumstances are sufficiently proximate to justify their admission in evidence.
 
 Human transactions are too varied, to admit of such clear decía,ration of the rule.
 
 Whatever tends to shed light on the main inquiry, and does not withdraw attention from such main inquiry, by obtruding upon the minds of the jury matters which are foreign, or of questionable pertinency, is, as a general rule, admissible evidence. On the other hand, undue multiplication of the issues is to be steadily guarded against, as tending to divert the minds of jurors from the main issue.’ ”
 

 246 Ala. at 72, 18 So.2d at 708 (quoting
 
 Mattison v. State, 55
 
 Ala. 224, 232 (1876) (emphasis added)).
 
 Cf.
 
 Rule 403, Ala. R. Evid. (“Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”).
 

 After considering the facts of the case in light of the general rule against the admission of evidence that unduly confuses and multiplies the issues before the jury, the Court in
 
 Lee
 
 held that the evidence pertaining to Ruby’s pregnancy was not admissible. Specifically, the Court held:
 

 “The fact of Ruby’s pregnancy, through the agency of her father, does tend to shed light on the main inquiry, but unlike the fact of sexual intercourse with her father, it also tends to unduly multiply the issues and to divert the minds of the jury from the main issue.”
 

 246 Ala. at 72, 18 So.2d at 708.
 

 As this Court noted in
 
 Lee,
 
 the paternity of Ruby’s unborn child was not satisfactorily established by her testimony. Thus, evidence of Ruby’s pregnancy introduced a side issue — the question of the child’s paternity.
 
 See
 
 246 Ala. at 72, 18 So.2d at 708 (“[Ruby’s] testimony is not at all clear or satisfactory as to whether she became pregnant at a time which would necessarily exclude the possibility of her husband’s agency.”).
 
 [3]
 
 Any potential relevance of Ruby’s pregnancy to the rape of Elese was far outweighed by the potential for the question of the child’s paternity to multiply and confuse the issues before the jury. See
 
 Lee,
 
 246 Ala. at 72, 18 So.2d at 708 (“ ‘[U]ndue multiplication of the issues is to be steadily guarded against, as tending to divert the minds of jurors from the main issue.’ ’’(quoting
 
 Mattison, 55
 
 Ala. at 232));
 
 cf.
 
 Rule 403, Ala. R. Evid.
 

 Thus, contrary to the holding of the Court of Criminal Appeals in this case,
 
 Lee
 
 did
 
 not
 
 lay down a blanket rule that “evi
 
 *743
 
 dence showing the defendant impregnated the sister of the victim is inadmissible in Alabama.”
 
 Williams v. State,
 
 73 So.3d at 736. Rather, this Court in
 
 Lee
 
 held that,
 
 under the facts and circumstances of that case,
 
 the potential for prejudice and confusion outweighed any probative value that evidence of Ruby’s pregnancy might have had. In fact, this Court’s opinion in
 
 Lee
 
 strongly cautions that “no certain rule can be laid down, which will define, with unerring accuracy, what collateral facts and circumstances are sufficiently proximate to justify their admission in evidence. Human transactions are too varied to admit of such clear declaration of the rule.”
 
 Lee,
 
 246 Ala. at 72, 18 So.2d at 708.
 

 II. Progeny of
 
 Lee v. State
 

 In holding that “evidence showing the defendant impregnated the sister of the victim is inadmissible in Alabama,”
 
 Williams v. State,
 
 73 So.3d at 736, the Court of Criminal Appeals also relied on
 
 Bowden v. State,
 
 538 So.2d 1226 (Ala.1988),
 
 Watson v. State,
 
 538 So.2d 1216 (Ala.Crim.App.1987),
 
 Grizzell v. State,
 
 507 So.2d 969 (Ala.Crim.App.1986), and
 
 Sellers v. State,
 
 41 Ala.App. 612, 145 So.2d 853 (1962). In reviewing the holding of the Court of Criminal Appeals, we consider these cases as well as related cases decided by this Court.
 

 In
 
 Bowden v. State, supra,
 
 this Court affirmed the Court of Criminal Appeals’ decision in
 
 Watson v. State, supra.
 

 [4]
 

 In
 
 Anonymous v. State,
 
 507 So.2d 972 (Ala.1987), this Court affirmed that court’s judgment in
 
 Grizzell v. State, supra.
 

 [5]
 

 A plain reading of these cases reveals that they do not support the holding of the Court of Criminal Appeals in this case that “evidence showing the defendant impregnated the sister of the victim is inadmissible in Alabama.” 73 So.3d at 736. In both
 
 Bowden
 
 and
 
 Anonymous,
 
 this Court considered, among other issues, the admissibility of evidence indicating that the defendant in each of those cases had committed wrongful sexual acts with the victim’s sister and the admissibility of evidence indicating that the defendant had impregnated the victim’s sister. In both cases, this Court held that those issues were to be determined by applying certain general rules of evidence to the facts of each case.
 
 See Bowden,
 
 538 So.2d at 1233 (“The same factors for determining the admissibility of collateral acts of misconduct by the accused in other types of prosecutions are to be applied in determining the admissibility of collateral acts of
 
 sexual
 
 misconduct in the prosecution of
 
 sex crimes.
 
 Which is to say that, provided the test for materiality is met, evidence of collateral crimes or misconduct may be admitted.
 
 Of necessity, this analysis is case by case.”
 
 (final emphasis added));
 
 Bowden,
 
 538 So.2d at 1227 (“Applying the [general exclusionary] rule [of evidence] and its exceptions to the facts in
 
 Anonymous,
 
 we concluded that the Court of Criminal Appeals correctly determined that the evidence of ... the [victim’s] sister’s pregnancy and resulting child was inadmissible.”);
 
 Anonymous,
 
 507 So.2d at 973 (“In order to reverse the judgment of the Court of Criminal Appeals, a determination must necessarily be made that the evidence which that court held to be inadmissible was, indeed, admis
 
 *744
 
 sible. To make that determination,
 
 the applicable laws of evidence must be applied to the unique facts of this case.”
 
 (emphasis added)).
 

 In
 
 Sellers v. State,
 
 41 Ala.App. 612, 145 So.2d 858 (1962), the victim’s sister testified at trial that the defendant had raped and impregnated her. Unlike
 
 Lee,
 
 however, there was no suggestion in
 
 Sellers
 
 that someone other than the defendant could have been the father of the victim’s sister’s child. The Court of Appeals provided no analysis of the application of general rules of evidence to the specific facts of the case. Rather, citing the result in
 
 Lee,
 
 the Court of Appeals held that testimony that the defendant had raped the victim’s sister was admissible but that evidence of the resulting pregnancy “multiplied the issues and tended to divert the minds of the jury from the main issue.”
 
 Sellers,
 
 41 Ala.App. at 615, 145 So.2d at 856.
 

 It appears that, in
 
 Sellers,
 
 the Court of Appeals interpreted the result
 
 Lee
 
 as a blanket rule that, in a prosecution for rape of a child, evidence showing that the defendant raped another child is always admissible, while evidence of the resulting pregnancy of the other child is never admissible.
 
 See Sellers,
 
 41 Ala.App. at 615, 145 So.2d at 856 (“We cannot circumvent the holding of the
 
 Lee
 
 case and are, therefore, compelled on the authority thereof to order a reversal of this case.”).
 
 Lee,
 
 of course, did not lay down such a blanket rule.
 
 See Lee,
 
 246 Ala. at 72, 18 So.2d at 708. Because
 
 Sellers
 
 misapplies
 
 Lee
 
 in this regard and also conflicts with
 
 Bowden
 
 and
 
 Anonymous,
 
 we hereby overrule
 
 Sellers.
 

 Alabama has no general rule that “evidence showing the defendant impregnated the sister of the victim is inadmissible.”
 
 Williams,
 
 73 So.3d at 736. Rather, the admissibility of such evidence is to be determined according to the rules of evidence on “a case by case” basis.
 
 Bowden,
 
 538 So.2d at 1234.
 

 III. The Admissibility of Evidence of J.W.
 
 ⅛
 
 Pregnancy
 

 In
 
 Lee, Bowden,
 
 and
 
 Anonymous, supra,
 
 this Court considered the admissibility of evidence showing that the defendant had raped the victim’s sister and that the victim’s sister had become pregnant as a result. In each case, the Court held that these issues were to be determined by applying certain general rules of evidence to the unique facts of each case. We reiterate those rules of evidence before applying them to the particular facts of this case.
 

 “All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States or that of the State of Alabama, by statute, by these rules, or by other rules applicable in the courts of this State.” Rule 402, Ala. R. Evid. “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Rule 403, Ala. R. Evid.
 
 See Lee,
 
 246 Ala. at 72, 18 So.2d at 708.
 

 Further,
 

 “[ejvidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....”
 

 Rule 404(b), Ala. R. Evid.
 
 See Anonymous,
 
 507 So.2d at 973 (“In a prosecution for one offense, evidence of collateral
 
 *745
 
 crimes or acts is generally inadmissible to prove the guilt of the accused.”(footnote omitted));
 
 id.
 
 at 974 (“Although evidence of collateral crimes and acts may not be admitted to prove the accused’s bad character, it has been held admissible to prove such things as the accused’s criminal intent, his motive, or his identity, or to prove that the now-charged crime and another crime were committed pursuant to a single plan, design, scheme, or system.”);
 
 see also Bowden,
 
 538 So.2d at 1233 (“The same factors for determining the admissibility of collateral acts of misconduct by the accused in other types of prosecutions are to be applied in determining the admissibility of collateral acts of
 
 sexual
 
 misconduct in the prosecution of
 
 sex crimes.”).
 

 To be admissible for a purpose other than to prove that the accused acted in conformity with bad character traits, evidence of other crimes or wrongs “must be relevant to some issue that is material to the case.”
 
 Anonymous,
 
 507 So.2d at 974;
 
 see also Bowden,
 
 538 So.2d at 1233 (“[P]rovided the test for materiality is met, evidence of collateral crimes or misconduct may be admitted.”). In this case, in addition to W.M.’s testimony, Dr. Bernard’s testimony regarding W.M.’s injuries and the fact that she suffered from a sexually transmitted disease establishes that
 
 someone
 
 raped W.M. Williams does not dispute that W.M. was raped or sexually abused; rather, he contends that he was not the person who raped W.M. Thus, contrary to the holding of the Court of Criminal Appeals, the identity of W.M.’s rapist
 
 is
 
 a material issue in this case.
 
 Cf. Bowden,
 
 538 So.2d at 1234 (holding that “there was a real and open issue as to the rapist’s identity” because the defendant contended that the victim was raped by someone other than himself).
 

 The State argues that, under the facts of this case, evidence indicating that Williams had a sexual relationship with J.W. and that he fathered a child by her is relevant to prove the identity of W.M.’s rapist. According to Dr. Bernard, W.M. contracted chlamydia through sexual contact. Evidence was presented at trial indicating that Williams tested positive for chlamydia, although Williams elicited testimony to suggest that another inmate could have been the source of the positive chlamydia test administered by the jail staff. However, J.W. also tested positive for chlamydia. The fact that J.W. had a sexual relationship with Williams is established by her testimony and by Williams’s admissions that he fathered J.W.’s baby.
 
 [6]
 

 Dr. Bernard testified:
 

 “Chlamydia is a very rare disease in children. And we know that [it] is only passed by sexual contact in that age child. So to have two children in the same house with it, and to have an older person with chlamydia in the same home, you wonder about the fact that chlamydia could have been transmitted within the home via sexual contact.”
 

 As Dr. Bernard suggested in his testimony, the fact- of J.W.’s sexual relationship with Williams and her positive chlamydia test are relevant to show Williams’s identity as the rapist who gave W.M. chlamydia. Therefore, the Court of Criminal Appeals erred in holding that evidence of Williams’s wrongful acts with J.W. was immaterial to the issue of the identity of W.M.’s rapist.
 
 See Bowden,
 
 538 So.2d at
 
 *746
 
 1233 (“[P]rovided the test for materiality is met, evidence of collateral crimes or misconduct may be admitted.”).
 

 Williams concedes that he is in fact the father of J.W.’s baby, and there is no question as to the baby’s paternity. Even if J.W.’s testimony regarding the fact of Williams’s sexual relationship with her would have alone been sufficient to establish the identity of the person who raped W.M., the fact that a pregnancy was the natural result of Williams’s sexual relationship with J.W. tends to confirm the existence of that sexual relationship and sheds light on a material issue.
 
 See Bowden,
 
 538 So.2d at 1230 (“ ‘ “We know as a scientific fact that when a child has been born there has been an act of sexual intercourse (quoting
 
 Watson,
 
 538 So.2d at 1220)); Rule 404, Ala. R. Evid. (“Evidence of other ... acts” is admissible for purposes other than to prove “the character of a person in order to show action in conformity therewith.”). Under the unique facts of this case, although relevant to Williams’s identity as W.M.’s chlamydia-positive rapist, the fact that Williams fathered a child by J.W. does not unduly confuse or compound the issues.
 
 Cf.
 
 Rule 403, Ala. R. Evid. (“Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the jury....”);
 
 Lee,
 
 246 Ala. at 72, 18 So.2d at 708 (“ ‘[U]ndue multiplication of the issues is to be steadily guarded against, as tending to divert the minds of jurors from the main issue.’ ’’(quoting
 
 Mattison,
 
 55 Ala. at 232)).
 

 Moreover, fathering a child, in and of itself, is not a wrongful act. The circumstances
 
 surrounding
 
 the conception of the baby in this case—ie., Williams’s sexual relationship with J.W. when she was 12 years old—constitute the “wrongful act” in question. Under the circumstances of this case, evidence that a baby resulted from Williams’s sexual activities with J.W. does not significantly add to the prejudice Williams would have suffered if the trial court had merely allowed J.W. to testify that Williams had sex with her when she was 12.
 
 See Lee,
 
 246 Ala. at 72, 18 So.2d at 708 (“ “Whatever tends to shed light on the main inquiry, and does not withdraw attention from such main inquiry, ... is, as a general rule, admissible evidence.’ ’’(quoting
 
 Mattison,
 
 55 Ala. at 232)).
 
 Cf.
 
 Rule 403, Ala. R. Evid. (“Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....”).
 

 Accordingly, we hold that the trial court did not exceed its discretion by admitting evidence that Williams was the father of J.W.’s baby. The Court of Criminal Appeals erred in reversing Williams’s conviction and sentence. We now reverse its judgment and remand this case to that court for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 MAIN and WISE, JJ., recuse themselves.
 
 **
 

 [1]
 

 . The indictment identified Williams as “Lu-vertte Williams,” alias "Antoine Luvertte Williams.” Williams is referred to as "Antoine,” "Twon,” and "Luvertte” at various places in the record.
 

 [2]
 

 . Initials are used throughout this opinion to protect the anonymity of the victim, W.M., and her sister, J.W. See Rule 52, Ala. R.App. P. We note that J.W. is not related to Williams and that her surname is not the same as his.
 

 [3]
 

 . In 1944, when
 
 Lee
 
 was decided, scientific methods for determining paternity, such as DNA testing, were not available, and it was usually difficult, if not impossible, to accurately determine the paternity of a child born of an unmarried mother who had sexual relations with more than one man around the time that the child was conceived.
 

 [4]
 

 . In
 
 Bowden,
 
 this Court consolidated the appeals from two cases,
 
 Watson v. State, supra,
 
 and
 
 Bowden v. State,
 
 538 So.2d 1226 (Ala.Crim.App.1987).
 
 Bowden,
 
 538 So.2d at 1227.
 

 [5]
 

 . "In its opinion on certiorari review, the Supreme Court dropped Grizzell’s name from the style of the case and restyled the Court of Criminal Appeals' opinion
 
 'Anonymous
 
 v.
 
 State.’
 
 The Court of Criminal Appeals declined to do likewise.”
 
 Anonymous v. State,
 
 507 So.2d at 972, Reporter’s Note.
 

 [6]
 

 . J.W. testified at trial that she had had a sexual relationship with Williams nine months before the birth of her baby. J.W. also testified that Williams admitted to her that he was the father of her child. In addition, the prosecution entered into evidence a letter to the baby that was in Williams’s handwriting. In the letter, Williams wrote, "Happy Birthday [baby’s name], by [Williams], your daddy.”